[Philadelphia, January 30, 1832.]

## LAWALL and Wife *against* KREIDLER, Executor of KREIDLER.

### IN ERROR.

The estate of a testator is not liable for the funeral expenses of his widow.

From the record of this case returned on a writ of error to the Court of Common Pleas of *Northampton* county, it appeared, that

(Lawall *v.* Kreidler.)

*Christina Kreidler*, one of the plaintiffs in error, who afterwards inter-married with *William H. Lawall*, the other plaintiff in error, brought suit before a justice of the peace of *Northampton* county against the defendant in error, *Conrad Kreidler*, executor of *Frederick Kreidler* deceased, to recover a sum of money alleged to have been advanced by her for the defendant's use, being the amount paid by her for the funeral expenses of *Barbara Kreidler*, the widow of the defendant's testator. The justice gave judgment for the plaintiff, and the defendant entered an appeal to the Common Pleas. The cause was afterwards submitted to arbitrators, who also found in favour of the plaintiff, and the defendant appealed from their ward.

On the trial in the Court of Common Pleas, it was proved, that *Barbara Kreidler* died in the house of her daughter *Christina*. On the morning, on which she died, *Christina* sent to the defendant to inform him that her mother was dying. He did not come for a long time, and *Christina* sent for the grave-digger and clergyman. When the defendant arrived, he objected to *Christina's* holding the funeral, as it would be too expensive, and said he would hold it himself; he would have the victuals cooked at his house, and the funeral should be held at hers; to which *Christina* replied, that he should hold the funeral. To this observation he made no answer, but went away. He was afterwards applied to, to know whether he would not do something, but he made no answer. The funeral was held by *Christina*, who paid the expenses of it. The defendant sold the widow's goods after her death, but except one table, it did not appear what they were or for what sum they were sold.

*Frederick Kreidler*, by his will gave to his wife *Barbara*, during her natural life, his household and kitchen furniture, the use of the house in which he resided, with the garden, and the interest of two hundred pounds. He also directed his executor to keep a cow for her and to supply her yearly with a certain quantity of provisions, and as much fuel as she stood in need of.

Before her death *Barbara Kreidler* was in possession of a note for ninety dollars with some interest due upon it, which she endorsed to her daughter *Christina*, saying, at the time, that she had a great deal of trouble with her; that *Conrad* had threatened to sell her lot, and *Christina* might have the note to help herself.

The defendant's counsel demurred to the evidence given the plaintiff, who joined in the demurrer.

The jury assessed the plaintiff's damages at fifty dollars, fifty-three cents, but the court rendered judgment on the demurrer for the defendant.

After the judgment in the Court of Common Pleas, the plaintiff below married *William H. Lawall*, by whom, with the said *Christina*, this writ of error was sued out.

The cause was argued in this court by *Hepburn* for the plaintiffs in error, and by *Brooke* for the defendant in error.

(Lawall *v.* Kreidler.)

The opinion of the court was delivered by

Ross, J.—In this case there was a general demurrer to the evidence of the plaintiff. The court sustained the demurrer, and gave judgment for the defendant; in which it is now alleged, the court erred. The single and only question in this case, which is presented for our determination, is, whether the estate of a testator is liable for the funeral expenses of his widow. . The counsel for the plaintiff admits that the bequest made by *Frederick Kreidler*, deceased, to *Barbara*, his widow, was in lieu of dower; and that she elected to take the same in lieu of her dower at common law. They however contend, that the annuity and other bequests to her were entirely inadequate to her support after she became old and helpless, and that she must either have suffered from want, or have become a charge upon the township, if she had not been assisted by her daughter, the plaintiff, who after suit brought, intermarried with *William H. Lawall.* This allegation is not justified by the evidence; for a short time previous to her death she indorsed a note to *Christina*, the plaintiff, for ninety dollars with some interest due thereon; and she then told the person, who wrote her name on the note, and witnessed it, that "she was willing *Christina* should have the note; that she had had a great deal of trouble with her; that *Conrad* had threatened to sell her lot, and that she might have that to help herself." She was therefore not so destitute of the means of supporting herself, as the counsel have represented. Neither were the provisions made by the will entirely inadequate to her support, for if so, she certainly would not have been able to put out ninety dollars upon interest; and to have continued it upon interest until a short time previous to her death, when she thought proper to transfer it to *Christina* as much with a view of preventing *Conrad* from taking the lot from her, as it was to compensate her for any trouble, which she may have had with her. But admitting that she was as necessitous as has been represented, even a very pauper, would the estate of the testator be liable to maintain her, and to defray the expenses of her funeral? The plaintiff contends, that it would, and relies on the isolated case of *Bertie* v. *Ld. Chesterfield*, reported in 9 *Mod.* 30, 31. In that case, it was decided by the Master of the Rolls, that the estate of the husband in the hands of the devisee is liable for the funeral expenses of the testator's wife, although she lived apart from him on a separate maintenance. It was suggested in the bill, but not proved, that the plaintiff, Mr. *Bertie* was requested by the late Earl of *Caernarvan* to see his lady buried. The Earl of *Caernarvan* had devised six hundred pounds per annum to *Lord Chesterfield, subject* to the payment of his *debts.* His lady had power to dispose of her separate maintenance by will; and she accordingly made a will, and constituted the plaintiff executor thereof; by which will she gave away more than she had to dispose of. It was decreed, that because the plaintiff took nothing of her estate by being made executor, (for she gave away the

(Lawall *v.* Kreidler.)

whole in legacies,) the husband's estate was subject by law to pay the funeral expenses of the wife. 1 have been unable, from the researches which I have made, to find this case reported in any other book. It certainly wants that precision, which is requisite to give a correct view of the subject. Whether the Earl of *Caernarvan,* or his wife died first, does not distinctly appear. If she died first, then it was a debt, which the legacy to *Lord Chesterfield* would be liable to pay. We are also left entirely in the dark as to the nature of the provisions made for the separate maintenance; these provisions might have had considerable influence in making the decree. At any rate the reason assigned for the making of this decree could, under no circumstances, be applicable to a case arising under the laws of this state. According to our act of assembly *funeral expenses* must be first paid; and according to the decisions under that act, they must be paid before legacies, &c. The fact, therefore, of a wife bequeathing more than she possessed; or of an executor taking nothing by the will, which are the grounds of the decree in the case referred to in 9 *Mod.* can have no weight in the determination of this question by the courts of this state.

The only provisions in our laws in reference to this subject are to be found in the 30th section of the act of 1771, (*Purd. Dig.* 724,) and the 6th section of the act of 1812, (*Purd. Dig.* 742,) and also in the 4th section of the act of 1718, (*Purd. Dig.* 328.) The provisions of the act of 1771, and those of the act of 1812, may be considered as similar, so far as they have any bearing upon the present question. They provide for cases, where husbands, who have estates which should contribute to the maintenance of their wives or children, desert them and leave them a charge upon the city, borough, or township. In such cases, authority is given to the overseers of the poor, after having obtained a warrant or order from two magistrates, to seize so much of the goods and chattels, and also to receive so much of the annual rents and profits of the lands and tenements of such husband, &c. as such two magistrates shall direct for the maintenance of such wife, &c. which order being confirmed at the next court of quarter sessions, it shall be lawful for the justices of the said court to make an order for the overseers to dispose of so much of the goods and chattels as the said justices shall think necessary; and also to receive so much of the rents and profits of the lands, &c. as shall be ordered by the said justices. Whether the sequestration of the husband's goods and chattels, and the rents and profits of his real estate so authorised to be made, would continue longer than the husband's life, is a question not presented by the case under consideration for our adjudication. I express no opinion about it. There is, indeed, nothing in these acts, which can render the estate of the husband after his decease, liable to pay the funeral expenses of his widow. The act of 1718 has reference only to mariners and sea-faring men, remaining away beyond a limited time, and has no relevancy to the case under consideration.

(Lawall *v.* Kreidler.)

I have been unable to discover any provision in any of our acts of assembly authorising the funeral expenses of the widow to be defrayed out of the estate of the husband, or indeed any liability of the husband's estate for her maintenance, unless the sequestration of the rents and profits of his estate, made in pursuance of the acts just cited, be considered to be and continue a lien. It is difficult to see how any such law could be made consistently with the exercise of the husband's reasonable disposition of his estate. Suppose a woman has had three husbands, who have all died, leaving her a widow ; of the three husbands, whose estate would be subject to the payment of the widow's funeral expenses? If it be said, that the estate of the last husband is liable, I answer, that he died insolvent. *If it be said,* that the estate of the second husband must be subjected to the payment, I answer that she was the sole executrix and wasted the whole of it before her last marriage. But if it be said, that the estate of the first husband is liable, I answer, that he left her a valuable property, and that she has extravagantly run through the whole of it with the assistance of her other husbands. Certainly there would be no equity in making the estate of the first husband in the hands of devisees or *bona fide* purchasers liable for the payment of that which she had ample means left her to defray. If she has, by self indulgence or improvident management, become a pauper, she must be supported and buried as all other paupers are, who have no children able to support and bury them. But if she has children able to maintain and bury her, the laws of the state will compel them to do so. At common law, there was no support provided for the poor. It was an ecclesiastical regulation; one fourth of the tithes being applied to that purpose. As the system of tithes never existed here, this regulation could have no application in this state.

At the time of the decree in *Bertie* v. *Lord Chesterfield,* a woman living apart from her husband on a separate maintenance and contracting debts, could not be compelled to pay those debts out of her separate maintenance; the provision for her separate maintenance was exempted from their payment. But the law has since undergone a change on this subject; and her debts have been decreed to be paid out of her separate maintenance. It has even been doubted whether her separate maintenance is not liable for her funeral expenses. See Mr. *Jacob's Note to* 2 *Ross. on Leg.* 245, *London Edit. of* 1826.

There is no error in the judgment of the court below, and it must be affirmed.

Judgment affirmed.