## Wynkoop *versus* Wynkoop.

*Right of Widow to control the Disposition of the Remains of her deceased Husband.*

1. A wife has no right or control over the body of her deceased husband after burial: the disposition of the remains of the deceased belongs thereafter exclusively to his next of kin.

2. A widow filed a bill in equity against the brothers of her deceased husband, and his mother in whose cemetery lot he was buried, to obtain the removal of the body to another cemetery, claiming her right so to do as administratrix and as widow. *Held,*

(1.) That her duty to bury the body of the deceased terminated with the burial: and,

(2.) That as widow she had no right to it, after the interment.

APPEAL from the Common Pleas of *Schuylkill county*.

This was an appeal by Angelina C. Wynkoop *et al.* from the decree of the Common Pleas, enjoining them from preventing the removal of the remains of the late Colonel F. M. Wynkoop from Mount Laurel Cemetery, at Pottsville, to the Laurel Hill Cemetery, at Philadelphia.

The case was this:—Colonel Francis M. Wynkoop died suddenly, from an accidental gunshot wound, at his residence at Valencia, Schuylkill county, on the 13th of December 1857. His body, very shortly after his decease, was removed to the residence of his brother-in-law, Thomas I. Atwood, at Pottsville, in said county, and from thence buried in Mount Laurel Cemetery, in said borough of Pottsville, with military honours. Colonel F. M. Wynkoop had commanded a regiment during the Mexican war, composed in part of volunteer companies from Schuylkill county—and those whom he commanded, together with those with whom he served in Mexico, so far as practicable, attended his funeral, and formed part of his military cortege. The blood relatives of said deceased were desirous that the funeral should take place in Pottsville, and the remains be deposited in the lot of ground in the Mount Laurel Cemetery, owned by the mother of deceased; to which the widow, Mrs. Anna McK. T. Wynkoop, yielded assent, with the understanding, as she claimed, that the body might afterwards be removed to Laurel Hill Cemetery, near Philadelphia. Some time after the burial of Colonel Wynkoop, Mrs. Anna McK. T. Wynkoop, without holding any communication on the subject with the relatives of her deceased husband, made some arrangements for the removal of the body to Philadelphia, which, coming to the ears of Mrs. A. C. Wynkoop, the mother of the deceased, she, in writing, requested Mr. A. C. Russell, one of the wardens of Trinity Church, Pottsville, to forbid any trespass or opening of the ground, in any way, in her lot in Mount Laurel Cemetery, without the written order of her

[Wynkoop *v.* Wynkoop.]

daughter, Mrs. T. I. Atwood, or her son John E. Wynkoop, until further notice from her. Mr. Russell, in consequence of this notice, refused to deliver the key of said cemetery to the undertaker employed by Mrs. Anna McK. T. Wynkoop, to remove the body of her deceased husband to Philadelphia. In consequence of this, Mrs. Anna McK. T. Wynkoop, on the 30th day of November, A. D. 1858, presented her bill of complaint to the Common Pleas against Angelina Catharine Wynkoop, mother of deceased; John E. Wynkoop, brother; and Anna Wynkoop Atwood, sister of the same; and the husband of said Anna, Thomas I. Atwood; and the rector, churchwardens, and vestrymen of Trinity Church, Pottsville, in which she set forth the decease of her said husband, at the time and in the manner before stated. The desire expressed by the said Colonel F. M. Wynkoop, in his lifetime, to be buried, after death, at Laurel Hill Cemetery, near the monument or cenotaph there erected to the memory of her father, Major Twiggs. That immediately after the death of her husband, Mr. and Mrs. Thomas I. Atwood, John E. Wynkoop, and Captain George Wynkoop, relatives of her deceased husband, arrived at her residence, and entreated her to allow the deceased to be buried at Pottsville, which she refused to do, in consequence of the expressed wish of her husband, in his lifetime, to be buried at Laurel Hill, near Philadelphia, which they met by the difficulty in making the arrangements for the funeral in Philadelphia. That, after a long controversy, in order to overcome the objections of complainant to the burial of deceased in Pottsville, they assured her that she should be permitted to remove the remains of said deceased to Philadelphia whenever she pleased to do so, provided she made no further opposition to the burial in Pottsville; that Mr. T. I. Atwood and John E. Wynkoop pledged their honour to this effect, and that they would assist complainant in the removal of said remains; and took a solemn oath, standing by the side of the corpse, to the same purport. That Mrs. Atwood, who was present, consented to the arrangement, and assured complainant that her husband's word might be relied on, and that all he had promised would be performed. That Mrs. A. C. Wynkoop, the mother of deceased, who had arrived at Valencia afterwards, promised to the same effect, as also did George Wynkoop and wife, and Edward Wynkoop. That in accordance with such promise, the remains of Colonel F. M. Wynkoop were temporarily interred in a certain lot of ground in Mount Laurel Cemetery in Pottsville, to which Mrs. A. C. Wynkoop holds a title from the rector, churchwardens, and vestrymen of Trinity Church, Pottsville, under a deed which grants to her and her heirs and family the exclusive right of burial therein, &c. That notwithstanding the assurances of the relatives of her deceased husband, complainant believed that

[*Wynkoop v. Wynkoop.*]

those of them who are defendants in said bill were combining, confederating, and contriving to wrong her by refusing to allow her to remove said remains; and that she believed that any further attempt on her part to remove the body of her deceased husband would be forcibly resisted. That, as widow and administratrix of her deceased husband, she has the legal right to remove his remains to Laurel Hill Cemetery, near Philadelphia. And, after praying that defendants in said bill should be required to answer all matter therein set forth, prayed that the court may by injunction restrain said defendants, either directly or indirectly, by legal process or otherwise, from preventing the complainant in the removal of said remains, and that she might, by herself or her agents, have full ingress, egress, and regress to and from the said lot of ground for that purpose.

The court awarded a *subpœna* as prayed for in said bill, which was regularly and duly served upon the defendants therein named.

The rector, churchwarden, and vestrymen of Trinity Church, in answer to the bill, say that a deed for a burial-lot in said cemetery was made to Mrs. A. C. Wynkoop, as set forth in said bill; that Colonel Francis M. Wynkoop was buried therein; and that the notice referred to in said bill was served upon Edward Owen Parry, Esq., and Mr. Andrew Russel; and the same was shown to the undertaker.

Mrs. Anna M. Atwood, one of the defendants, by answer filed the 11th day of March 1859, admitted the death of her brother, the said Colonel F. M. Wynkoop, as set forth in complainant's bill of complaint, but asserted that so far as she has heard, it was not true that her deceased brother had ever in his lifetime expressed a wish to be buried in Laurel Hill Cemetery, near Philadelphia; on the contrary, she had frequently heard him say that his wish was that his remains should be buried by his regiment (meaning the regiment he had commanded during the Mexican War) the large proportion of whom are residents of Schuylkill county, Pa. That she does not know that Colonel F. M. Wynkoop ever during his lifetime expressed a wish to be buried at Laurel Hill Cemetery; and says that nothing was said at Valencia, while the body remained there, of any such wish on the part of her deceased brother. That the said Colonel F. M. Wynkoop had urged upon his mother during his lifetime to purchase a lot of ground in Mount Laurel Cemetery, and that partially in pursuance of such request the lot of ground in which his remains rest was purchased. That promises had been made complainant immediately after the decease, because of the nervousness under which she was suffering at this time, rendering argument or opposition useless. That the most unreasonable requests were made by her, which for the sake of soothing her

[Wynkoop *v.* Wynkoop.]

and allaying her excitement were concurred in, but that no such oath as was spoken of in complainant's bill was made in the presence of defendant, nor does she know or believe that such oath was ever made by any one. Denied that any promise was made in her presence by Mrs. A. C. Wynkoop to the effect that the remains of her deceased son should be removed, and that she did not believe that any such promise was made by her. That she does not know that Mrs. Twiggs made any objections to the funeral taking place in Pottsville, or that she had asserted that such burial there was only temporary. That she has not said that her brother's widow has no right to remove her husband's remains from Pottsville; such right depending upon the decision of the court. That she did promise complainant to aid her in the procuring the removal of such remains from Pottsville, but that such assistance has never been asked from her, nor, so far as she knows, from any of the brothers named in the bill of complaint. That without consultation, and apparently without regard to the wishes or feelings of the family of deceased, complainant had made arrangements for the removal of said remains with an undertaker of the borough of Pottsville. That, for the purpose of avoiding legal proceedings and for other reasons, defendant wrote to her mother, urging her to permit such removal of the remains, rather than there should be a public dispute about it; but that her mother, as defendant believes, out of a sincere regard for the wishes of her dead son, as expressed during his life, refused to do so. Denying all and all manner of unlawful combination, &c., wherewith she is in said bill charged, and asked to be dismissed from court, with her reasonable costs and charges.

The answer of Mrs. A. C. Wynkoop, the mother of said Francis M. Wynkoop, sets forth the fact of the death of Francis M. Wynkoop on the 13th day of December 1857; but that it is not true, as she believes, that Francis M. Wynkoop frequently in his lifetime expressed his desire to be buried at Laurel Hill Cemetery, near Philadelphia; on the contrary, so early as the year 1847, the following passage was written by him on the fly-leaf of his Bible, when he was in command of his regiment in Mexico, and just before he was to set forth upon a duty which he regarded as extremely hazardous:—

"Mountain Pass, 40 miles from Vera Cruz. Monday evening, April 12th, in my tent at Camp.

"Santa Anna is within 40 miles, with 15,000 troops. I go to reconnoitre to-morrow. I may fall then, and most probably will on the next day. I care but little where my bones lie, but have an idle fancy which looks beyond dissolution, and points out a green spot in the cemetery at Pottsville, where those I love might raise a simple stone, and visit it occasionally. It is a silly

[Wynkoop v. Wynkoop.]

thought, but it is written here because I like the recollections it brings forth. I remember dear Anna's verses : ' Let Neddy plant the willow,' &c.''

That, after the return of the said Colonel Wynkoop from Mexico, defendant has heard him read said extract from his Bible to complainant, seemingly with continued recognition of the wish therein contained. That said complainant made urgent and frequent importunities to said F. M. Wynkoop in his lifetime to purchase a lot of ground in Laurel Hill Cemetery, and that he never did purchase a lot there or in any way comply with such importunities, but that he was urgent in his requests to defendant to purchase a burial-lot in Pottsville for the use of defendant and her children ; and that the lot where his remains now rest was purchased in accordance with his wishes and the wishes of her other children, and conveyed to defendant by deed dated the 28th day of April, A. D. 1851. That defendant has frequently heard the said F. M. Wynkoop, since the above entry was made and after his marriage with complainant, say that he desired to be buried by his regiment, in Pottsville, and has never heard him express or intimate a wish inconsistent therewith. Defendant further says that she has been informed that owing to the nervous and excited state of said complainant after her husband's death, that in order to pacify her, any promises were made complainant, however unreasonable such requests were, and however impossible to be complied with, and that certain of the relatives of deceased did promise complainant to assist her in the removal of said remains, but she denied that she at any time or in any way agreed to such removal. That no such reason as the desire of deceased to be buried at Laurel Hill was mentioned in her hearing at any time during the preliminary proceedings to his burial. That she never heard it stated from any one, before she saw the fact stated in such bill of complaint, that it was contemplated to place his remains near the cenotaph erected to the memory of the late Major Twiggs ; that she believes that deceased would have objected to such an arrangement, in his lifetime, as he was an entire stranger to Major Twiggs. That she never united as stated in said bill, in a promise made by relatives of said deceased that such burial should be temporary. That she believes no notice was made or given to the relatives of the contemplated removal, but that arrangements were made with an undertaker in Pottsville to dig up said remains from their resting-place, and remove them, like a bale of goods or merchandise, to Philadelphia.

That it is true that she is the owner of the burial lot in Mount Laurel Cemetery, in Pottsville, in which the remains of her deceased son rest (a copy of her deed for the same being part of her answer), and she claims as such owner that she has the abso-

[Wynkoop *v.* Wynkoop.]

lute and unqualified right to control the removal of the remains deposited therein, and to prevent said lot from being invaded or disturbed in any way, and that she is advised by her counsel that no power is vested by law in your honours that would authorize interference with her rights as aforesaid, and she respectfully submits that there is no such right of property vested in the said Anna McK. T. Wynkoop, as widow, as would enable your honours to take cognisance thereof. Nor can defendant see how any such right belongs to complainant in the capacity of administratrix, her power in such capacity being confined by law (unless specially enlarged) to the personal property of the deceased, whose estate she undertakes to settle. And then, denying all unlawful combination, asked to be dismissed from court, with her reasonable costs and charges.

Testimony was taken and read on the argument in the court below, and on the 5th day of August 1861, the court granted an injunction according to the prayer of the plaintiff against defendants on the 1st day of September next ensuing.

Whereupon the case was removed into this court, as above stated, where the following errors were assigned:—

1. The court erred in granting the injunction, as prayed for by complainant.

2. The court erred in not dismissing the complainant's bill, under the bill and answer filed, and facts in evidence.

*E. P. Dewees* and *F. W. Hughes,* for appellants.—1. The title of appellant to burial lots No. 352 and 364 in Mount Laurel Cemetery, Pottsville, is valid and exclusive, and can only be curtailed or defeated by her own acts, of which there is neither proof or allegation.

The remedy by injunction cannot extend to a party who shows no right. The legal right to remove these remains is averred in the bill, but unless a *property* or *right* in the mortal remains of her deceased husband is shown, she cannot enter upon the grounds of the respondent to remove them.

There is no right of *property* in such remains, from their very nature. No authority for such claim can be shown in any civilized community from the time of Adam. But there are laws to secure interments and maintain their inviolability thereafter. Funeral expenses are preferred in the settlement of estates of decedents—the larceny of the vestments which enclose their remains is punishable by law, on complaint of the executor or administrator. The heir has a property in the monuments and escutcheons of his ancestors, but none in their bodies or ashes: 2 Bl. Com. 429.

2. The mother, who owned these lots, could have maintained

[Wynkoop *v.* Wynkoop.]

a civil action against any one that disturbed remains therein interred.

3. Nor has the complainant by reason of the alleged promises of the respondents. A court of equity will not seek to enforce rights which have no legal existence, nor can legal rights be acquired by an agreement in relation to that which, in contemplation of law, has no value.

In an action by the widow for breach of this agreement or promise, what would be the measure of damages? But there was no such agreement, as the testimony abundantly shows. All injunctions are predicable on rights: Stockdale *v.* Ullery, 1 Wright 487; Rhea *v.* Forsyth, 1 Id. 507. See also the Case of Stephen Girard's Remains, reported in the P. L. Journal.

*Benj. W. Cumming,* for appellee.—1. The question of property in the remains is totally irrelevant to the real question. If a dead body is not the subject of property, it follows that no right of property is violated by a *lawful* disinterment. The disinterment of a corpse without authority, might be an indictable offence, as amounting to a public misdemeanor, irrespective of any question of property. And a conspiracy to prevent a burial is indictable at common law, and for the same reasons probably a conspiracy to *prevent* a lawful disinterment might be held an indictable offence. See note Hood on Ex'rs. 35. To inter a dead body is not to treat it as property. No right of property, therefore, is necessarily claimed or exercised in the mere change of burial-place. Nobody ever supposed that to bury the deceased in a manner suitable to his rank and circumstances, which is among the rights and duties of an administrator, is associated with any idea of property in the corpse. No acts of ownership are thereby exercised. Hence the idea of property in the remains may be dismissed as irrelevant to the true question.

2. In reply to the second branch of the argument, it is only necessary to remark that the appellant has but an easement in the burial lot, the legal title to the same being vested in the officers of the corporation of Trinity Church, who are the custodians of the cemetery, and make no objection. No injury to the exclusive rights of burial claimed will be done by a removal of the remains. The only injury will be to the asserted right of retaining the remains, because they happened to be deposited in the lot of ground in question as a temporary resting place, with a reservation of the right of removal, agreed to and acquiesced in at the time by all parties. This agreement, on the part of the mother and collateral relatives, in regard to the future removal of the remains, was, in our view of the case, wholly unnecessary, as the authority of the widow and administratrix is ample without it. The right and duty of burial is in the

administratrix. This is in accordance with all authorities. This right appertained to her office as well as to her near relation to the deceased. To select a spot for his final resting-place, therefore, is necessarily included in her right to bury, and this right can neither be barred, waived, or abandoned by a temporary interment, with or without the promises of the relatives on the subject. We think the agreement is fully proved and established. It is said that a court of equity will not enforce an agreement relative to a subject which, in legal contemplation, has no value. This must refer of course to the all-pervading idea of property in the remains—not to the independent right of removal, which is of *inestimable value* to the afflicted widow. The value of the right of removal to the administratrix and widow, is confounded with the idea of property in the remains, or made to depend on it, a fallacy already answered by showing it to be totally *disconnected with the duty of burial.* It is urged that the agreement is *nudum pactum,* and not legally binding, and therefore may be violated with impunity. If the complainant stood upon the agreement alone, as the basis of her right of removal of the remains, she might answer the undue advantage sought to be taken by the plea of *nudum pactum,* by saying that courts of equity have allowed exceptions to the rule where the contract, although voluntary, is deemed to be founded upon a *meritorious* consideration: 2 Story's Eq. 783; 1 Id. § 169; Stockdale *v.* Ullery, 1 Wright 486.

The defendants below have confederated together to prevent an administratrix and widow from the exercise of a clear legal right. An injunction is therefore awarded against them to restrain their acts, and protect the rights of complainant in a case where adequate redress at law is unattainable. Damages at law would be wholly inadequate to the vindication of complainant's rights. See Sheetz's Appeal, 11 Casey 95. If the wishes of the deceased, expressed in his lifetime, are to rule the case, the evidence is overwhelming in favour of the complainant. But the superior authority of the mother and collateral kindred is urged on scriptural grounds, "bone of their bone," &c. This argument is conclusively answered in Genesis ii. 24: "Therefore shall a man leave his father and his mother and shall cleave unto his wife: *and they shall be one flesh.*"

We add nothing more than the following authorities on the subject of disinterment to show its lawfulness: Tate *v.* The State, 6 Bl. 111; 1 Sup. U. S. Digest 359, tit. *Burial Grounds,* &c.; also 1 Sup. U. S. Digest 360, pl. 5. The Girard Case, cited by appellant, is not adverse to us.

The opinion of the court was delivered, April 21st 1861, by

Read, J.—So universal is the right of sepulture, that the

[Wynkoop v. Wynkoop.]

common law, as it seems, casts the duty of providing it, and of carrying to the grave, the dead body decently covered, upon the person under whose roof the death takes place; for such person cannot keep the body unburied, nor do anything which prevents Christian burial; he cannot, therefore, cast it out, so as to expose the body to violation, or to offend the feelings or endanger the health of the living; and for the same reason, he cannot carry the dead body uncovered to the grave: Reg. v. Stewart, 12 Ad. & Ellis 773 (40 E. C. L. R.). The executor or administrator must bury the deceased in a manner suitable to the estate he leaves behind him, and such funeral expenses are placed, by an Act of Assembly, in the first class of preferred debts. Where the body is decently and properly buried in an appropriate place, such as a family vault, or burial lot in a churchyard, in or near the neighbourhood of the residence of the decedent, it would seem that all was performed which the law required from the living. The duty of the executor or administrator is over, and also his rights, except in case of an improper interference with the grave, the body, or the grave-clothes of the deceased. The claims of society have been entirely satisfied. It is of rare occurrence that any dispute arises after the burial, or that any case has been submitted to a court for its decision. The law of burial, in its relations to the place of interment and the protection of the dead body, was discussed at great length by the Hon. Samuel B. Ruggles, in a very learned report to the Supreme Court of the City of New York, in the matter of the widening of Beekman street, which took away certain vaults for the burial of the dead, and required the disinterment and reinterment in some other place of the dead bodies contained in them. Besides the vaults, the bodies contained in eighty graves, amounting to about one hundred, were all disturbed and removed by the church. In one of the graves lay the body of Moses Sherwood, indicated by a marble head-stone bearing the name of "Sherwood." His daughter, Maria Smith, acting for herself and her sister, and for the descendants of her brothers and sisters, five in all who have died, claimed that the remains of her father be reinterred in a separate grave in such suitable locality as she might select, that the existing monument be erected over such grave, and that the necessary expense be defrayed out of the funds in court. The referee was of opinion that the claim should be allowed, and submitted to the court certain conclusions of which the second and third were as follows: "2. That the right to bury a corpse and to preserve its remains, is a legal right which the courts of law will recognise and protect. 3. That such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin."

After hearing counsel upon the report, the court confirmed it

[Wynkoop *v.* Wynkoop.]

in all respects, awarding $100 to Maria Smith, as next of kin of Moses Sherwood, directing her with that sum to reinter his remains, and erect at his grave the monument taken in widening the street, and declaring her entitled to the possession of the remains and of the monument for that purpose: 4 Bradford's Reports, Appendix 503, 532.

Colonel Francis M. Wynkoop died suddenly, from an accidental gunshot wound, at his residence at Valencia, Schuylkill county, Pennsylvania, on Sunday the 13th day of September 1857, and was buried in the course of the week in the burial lot of his mother, Angelina C. Wynkoop, in the Mount Laurel Cemetery, belonging to the rector, churchwardens, and vestrymen of Trinity Church, Pottsville, in the said borough of Pottsville, with military honours, the deceased having served in Mexico, in command of a volunteer regiment principally raised in Schuylkill county. Some days afterwards his widow took out letters of administration in Schuylkill county upon her husband's estate. On the 10th of November 1858, in pursuance of the orders of his widow, the complainant, an undertaker, called on one of the church-wardens for the key of the cemetery, in order to take up and remove the remains of her husband to Laurel Hill Cemetery, near Philadelphia, which was refused, in consequence of a notice from the mother and next of kin of the decedent, and in whose lot he was buried.

On the 30th of the same month, the widow, in her own right and as administratrix, filed a bill in equity in the Court of Common Pleas of Schuylkill county, against Angelina C. Wynkoop (the mother), John E. Wynkoop (a brother), Anna M. Wynkoop (a sister), Thomas J. Atwood, and the rector, churchwardens, and vestrymen of Trinity Church, Pottsville, praying an injunction commanding the mother and the said corporation to permit the plaintiff and her agents to remove the body of the deceased. Upon the hearing on bill, answers, and proofs, the court below decreed that an injunction be issued according to the prayer of the plaintiff against the defendants, from which an appeal was taken by the mother, Angelina C. Wynkoop.

The bill asserts a fixed legal right in the plaintiff in two capacities: 1st, as administratrix; 2d, as widow. As to the first, the absolute duty to bury terminated with the burial, and no subsequent expenses would be a legal charge upon the estate of the decedent, whether solvent or insolvent. 2. As widow, in this case she would appear to have no rights after the interment. Suppose a woman has had three husbands, who have all died leaving her a widow (3 Rawle 304), is she to be burdened with the duty and vested with the charge of their three bodies against the expressed wishes of the blood relations and next of kin of each?

[Wynkoop v. Wynkoop.]

But it is said there was an agreement or promise made by all, or some of the relatives of Colonel Wynkoop to the plaintiff, when she was evidently labouring under great mental excitement, almost amounting to insanity, in order, as it would appear, to restore her to a state of comparative calmness. The appellant, in her answer, says, "said complainant asserted that the body of said F. M. Wynkoop should never be buried at all, but that it ever should remain with her." Her nerves were wrought up to the highest state of excitement, and consequently her reason, for the time, was almost shattered. The appellant most positively denies that she ever made any such promise or agreement, and the evidence in the cause does not prove her positive and unqualified assertion to be untrue. This ground therefore fails, and the right of the appellant is founded upon her position as mother and next of kin. Besides the fact that the body of her son is deposited in her burial-place in consecrated ground, and that he was buried with the ceremonies of the church and with the honours of war, is sufficient to justify us in refusing permission to a removal under the circumstances.

We do not think the present case calls for the interference of a court of equity, and, therefore,

It is ordered, adjudged, and decreed that the decree of the Common Pleas of Schuylkill county be reversed, and the bill be dismissed.