## Pettigrew, Appellants, *v.* Pettigrew.

207    313
26 SC ² 81

*Burial of the dead—General rules on the subject—Surviving husband—Widow—Next of kin—Reinterment.*

There is no universal rule as to the burial of the dead applicable alike to all cases, but each case must be considered in equity on its own merits having due regard to the interest of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association.

Subject to this general result it may be laid down first, that the paramount right is in the surviving husband or widow, and if the parties were living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor.

Secondly, if there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified it may be by circumstances of special intimacy or association with the decedent.

Thirdly, how far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail.

Fourthly, with regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent and reserving always the right of the court to require reasonable cause to be shown for it.

A decedent left a widow and one child, his next of kin, to survive him. He was buried in a lot belonging to his father's family, with the widow's consent, but whether her consent was more than for a temporary interment was disputed. Decedent's child died about a year afterwards and was buried in a lot purchased by the widow in another cemetery. The daughter, though young, appears to have had a sentiment on the subject, and desired her father to be buried with her. The evidence showed that there was not room in the lot where decedent was buried for the burial of his wife and daughter unless they were put in the same grave with the decedent, and the hostile feelings of his brother and sisters made it doubtful if even this privilege would be conceded. *Held* that the widow had a right to remove the body of her husband to the new lot purchased by her.

The expression frequently used that there is no property in a corpse is inaccurate. There is property but it is in the nature of a trust and limited in its exercise to the purposes of the trust.

The syllabus in Wynkoop v. Wynkoop, 42 Pa. 293, is too broad. That case discussed and explained.

Argued Oct. 13, 1903.  Appeal, No. 36, Oct. T., 1903, by

plaintiffs, from decree of C. P. Armstrong Co., June T., 1901, No. 195, dismissing bill in equity in case of S. H. Pettigrew et al. v. Margaret J. Pettigrew et al.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

The court stated the facts to be as follows :

Matthew Pettigrew in his lifetime was the owner of a lot in the cemetery at Whitesburg, Pa.   After his death he was buried there as were also his wife and two daughters.   We have no testimony as to the size of the lot.

On June 17, 1900, James Pettigrew, a son of Matthew, died, leaving to survive him a widow, Margaret J. Pettigrew, the defendant in this case, Jennie Pettigrew, their child, eleven years of age at the time of her father's death, a brother, Dr. S. H. Pettigrew, and two sisters, Mrs. Sarah Sturgeon and Mrs. Martha Shoemaker, the last three mentioned being the plaintiffs in this case.

James Pettigrew died suddenly without making any provision by will as to the place of his interment.   The testimony is conflicting as to whether or not the widow desired his body to be interred in the Whitesburg cemetery.   Dr. S. H. Pettigrew testifies that she said she would leave it all to him, while Mrs. Pettigrew testifies that it was only her intention to bury him there temporarily.   James Pettigrew was buried in the Whitesburg cemetery on June 19, 1900.   His only child, Jennie Pettigrew, died on May 12, 1901, and was buried in the Elderton cemetery at Elderton about five miles distant from Whitesburg.   It appears from the evidence that some time after the death of James Pettigrew his widow purchased a lot in the Elderton cemetery.   The date is not given. That she purchased a monument for the purpose of erecting it at Elderton cemetery.   That her daughter Jennie had picked out the lot and that it was her last request that she be buried there and that her father be brought and laid beside her.   That she had picked out this lot before the death of her father and talked to him about it.   And that before her death the monument was ordered with the intention of setting it up on this lot at Elderton.

Shortly after the death and burial of Jennie Pettigrew in the Elderton cemetery, Margaret Pettigrew had a grave dug beside the grave of her child for the purpose of reinterring the body of James Pettigrew therein.   When the plaintiffs, the brother and sisters of the deceased, learned of this they had the present bill filed against the widow and the trustees of the Whitesburg Cemetery to prevent the removal.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*J. H. McCain*, with him *W. J. Christy*, for appellants.—A wife has no right or control over the body of her deceased husband after burial ; the disposition of the remains of the deceased belongs thereafter exclusively to his next of kin : Wynkoop v. Wynkoop, 42 Pa. 293.

*M. F. Leason*, with him *J. B. Neale* and *J. H. Painter*, for appellee, cited : Fox v. Gordon, 16 Phila. 185 ; Larson v. Chase, 47 Minn. 307   (50 N. W. Repr. 238) ; Cooney et al. v. Lawrence, 11 Pa. C. C. Rep. 79 ; Hackett v. Hackett, 19 Lawyer's Rep. Annotated, 558 ; Weld v. Walker, 130 Mass. 422 ; Gampher v. Poulson, 19 W. N. C. 230.

OPINION BY MR. CHIEF JUSTICE MITCHELL, January 4, 1904:

When a man dies, public policy and regard for the public health, as well as the universal sense of propriety, require that his body should be decently cared for and disposed of.   The duty of disposition therefore devolves upon some one and must carry with it the right to perform.   It is commonly said, being repeated from the early cases in England where the whole matter of burials was under the jurisdiction of the ecclesiastical courts, that there can be no property in a corpse.   But inasmuch as there is a legally recognized right of custody, control and disposition, the essential attribute of ownership, I apprehend that it would be more accurate to say that the law recognizes property in a corpse, but property subject to a trust and limited in its rights to such exercise as shall be in conformity with the duty out of which the rights arise.   Whether,

however, the rights be called property or not is manifestly a question of words rather than of substance.

The general subject is treated historically with great learning and ability in Matter of Widening Beekman Street, in the City of New York, 4 Bradford, Surrogate Rep. 503, by the referee, Hon. Samuel B. Ruggles, whose report is a storehouse to which all subsequent discussions have resorted for materials. An exhaustive catalogue of the law literature on burials, etc., will also be found in a note to Johnston v. Marinus, 18 Abbott's New Cases, 75. The principal judicial decisions on the subject are Wynkoop v. Wynkoop, 42 Pa. 293 ; Fox v. Gordon, 16 Phila. 185 ; Pierce v. Cemetery Co., 10 R. I. 227 ; Hackett v. Hackett, 18 R. I. 155 ; Secord v. Secor, 18 Abbott's N. C. 78 n. ; Weld v. Walker, 130 Mass. 422 ; Larson v. Chase, 47 Minn. 307 ; Johnston v. Marinus, 18 Abbott's N. C. 75 ; Renihan v. Wright, 125 Ind. 536 ; O'Donnell v. Slack, 123 Cal. 285 ; Enos v. Snyder, 131 Cal. 68 ; McEntee v. Bonacum, 60 L. R. A. 440.

It is not necessary here to go into a general discussion of the various questions raised in the decisions. They have been reviewed with admirable clearness and accuracy by Judge Thayer in Fox v. Gordon, 16 Phila. 185, supra. But certain deductions may be drawn and put into practical shape from the cases.

The right of control and disposition whether called property or not springs as already said from the legal duty or obligation. In Pennsylvania, as generally elsewhere, that devolves on the executor or adminstrator. The statute puts the duty of paying the decedent's debts out of his assets, on his executor, and expressly names funeral expenses as first in the order of priority of payment. Prima facie, therefore, the duty to determine when, where and in what manner the body shall be buried rests with the executor or administrator. But his right is not absolute nor his judgment conclusive. The determination must rest as said in Fox v. Gordon, supra, "upon considerations arising partly out of the domestic relations . . . . partly out of the universal sentiment . . . . that the dead should repose in some spot where they will be secure from profanation ; partly out of what is demanded by society for the preservation of the public health, morality and decency ; and partly often out of

what is required by a proper respect for and observance of the wishes of the departed themselves." Under the statute in Pennsylvania the right to administration belongs first to the surviving husband or widow. To such survivor, therefore, belongs the right of control of the body for interment, and a waiver of the right to administer will not include a waiver of such right of control unless it be express and absolute. In the exigencies of business and the interests of the estate it is not unfrequently desirable that a stranger, or even a creditor should administer, but no court would sanction a disregard by such an administrator of the wishes of a widow or even of the next of kin, as to the place and manner of burial.

How far the decedent's own wishes or even his specific directions are to prevail must be regarded as unsettled. In Williams v. Williams, L. R. 20 Ch. Div. 659, KAY, J., held that the right of custody being incident to the duty of burial which is in the executors, a man in England "cannot by will dispose of his dead body." And in a note to a report of the same case in 21 Am. Law Reg. N. S. 512, Prof. Ewell seems to approve the ruling though he admits that it is of first impression. The case grew out of the disinterment and cremation of the body by a stranger to the family, under written directions of the deceased, and with great respect for the tribunal I cannot help thinking that the decision was unconsciously influenced by the English conservatism in regard to burial, and the attendant reluctance to countenance in any way the innovation of burning. The clear trend, I think, of the American decisions, is to the contrary notwithstanding the apparent assent in Enos v. Snyder, 131 Cal. 68, where the cases cited do not support the dictum. See Fox v. Gordon, 16 Phila. 185, already cited: Pierce v. Cemetery Co., 10 R. I. 227; Johnston v. Marinus, 18 Abbott's N. C. 75; Secord v. Secor, 18 Abbott's N. C. 78; O'Donnell v. Slack, 123 Cal. 285; Lowry v. Plitt, 16 Am. Law Reg. N. S. 155, and note by Mr. Francis Rawle. And whether the decedent's directions are regarded as paramount or not it is agreed in all the cases that they are entitled to respectful consideration whenever the question comes into court.

In the absence of a surviving husband or widow the wishes of the next of kin are entitled to be considered with varying weight according to the nearness of the kinship and the per-

sonal relations between them and the decedent. A more distant relative or even a friend not connected by ties of blood may have a superior right under exceptional circumstances to one nearer of kin, as was held in Scott v. Riley, 16 Phila. 106.

The foregoing observations relate chiefly to the first interment. A reinterment involving a removal to another locality stands upon a somewhat different footing and has been the cause of most of the litigation on the subject. The duties of the executor or administrator terminate with the first interment, and on the question of removal he is not a party in interest. The controversy, if there be one, must be between next of kin. The presumption is against a change. The imprecation on the tomb at Stratford " curst be he that moves my bones," whether it be Shakespeare's own or some reverent friend's, expresses the universal sentiment of humanity not only against profanation but even disturbance. When a case comes into court, the chancellor will regard this sentiment, and consider all the circumstances in that connection.

The case of Wynkoop v. Wynkoop, 42 Pa. 293, has been frequently cited, and is relied on by appellant here as deciding that the rights of the next of kin are superior to those of the widow. The reporter's syllabus apparently goes that far, but it is much too broad and is an improvident generalization from the second conclusion of the referee in Re Beekman Street, 4 Bradf. 503 (quoted by READ, J.,), that the right " belongs exclusively to the next of kin." But the Beekman street case was a claim by next of kin to be allowed to control the removal of a body which had been buried more than fifty years and whose removal was made necessary by the widening of a street through the churchyard. There was no widow living and the contest was an amicable one between the next of kin and the church to determine their respective rights. The referee held that in such case the rights of the next of kin were exclusive of those of the church, and it is said (Hackett v. Hackett, supra) that he added a note to his report explaining that his use of the term next of kin had no reference to any rights of a surviving husband or widow. The Wynkoop case grew out of the attempt of the widow to remove the body of Colonel Wynkoop, a distinguished soldier, more than a year after it had been buried, as claimed, by her consent, with the

honors of war, and in accordance with his known wishes, in the city of his home. What the case really decides is that the rights of the widow as administratrix ended with the first interment, and as to her rights as widow the court was justified "in refusing permission to a removal under the circumstances." The case is not authority for anything more.

The result of a full examination of the subject is that there is no universal rule applicable alike to all cases, but each must be considered in equity on its own merits having due regard to the interests of the public, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association.

Subject to this general result it may be laid down first, that the paramount right is in the surviving husband or widow, and if the parties were living in the normal relations of marriage it will require a very strong case to justify a court in interfering with the wish of the survivor.

Secondly, if there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified it may be by circumstances of special intimacy or association with the decedent.

Thirdly, how far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail.

Fourthly, with regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent and reserving always the right of the court to require reasonable cause to be shown for it.

In the present case the court finds as facts that when the decedent died he left a widow and one child, his next of kin. The child died about a year afterwards and was buried in a lot in another cemetery purchased by the widow. The daughter, though young, appears to have had a sentiment on the subject and desired her father to be buried with her. The decedent was buried in a lot belonging to his father's family, with the widow's consent but whether her consent was more than for a temporary interment is disputed. Whatever may be the fact

as to that it is found by the court below that there is not room in the family lot for the burial of the daughter and the widow unless they be put in the same grave with the decedent, and the hostile feelings of the brother and sisters make it doubtful if even this privilege would be conceded.    These facts more than justify the conclusion of the learned judge below that the right of the widow to remove the body to the new lot purchased by her for that purpose should not be interfered with.

Decree affirmed at costs of appellant.