## Durkin Estate

*Thomas J. Foley, Jr.*, for accountant.

*Paul A. McGlone* and *Frank J. McDonnell*, for claimant.

BRADY, P. J., March 4, 1953.—On the audit of the first and final account of John Wodarak, administrator of the Estate of Anne C. Durkin, deceased, the accountant in his petition for distribution set forth that a claim in the amount of $925 of T. J. Kenny, undertaker, for funeral expenses of decedent was refused:

"(1) Because the estate of John Durkin, deceased husband of this decedent, is liable for said funeral expense; (2) The amount of the claim for services is excessive under the circumstances."

On presentation of the claim both parties' counsel

stipulated the facts, but requested leave to present testimony as to the reasonableness of the amount after the court's ruling on whether or not the estate was liable to claimant.

The disputed claim is an aftermath of an unfortunate happening. It is stipulated that:

"1. Anna C. Durkin and John H. Durkin, her husband, died on June 28, 1950, in their home in the Borough of Jermyn, Pennsylvania, as a result of a fire which destroyed the home. They were found in the morning after the fire and there was no evidence that they died otherwise than simultaneously." Further:

"4. Mary Durkin, sister of the husband, John H. Durkin, arranged for the burial of both decedents with T. F. Kenny, the claimant, as a result of which he presented his bill in the sum of $925 to the Administrator of the Estate of Anna C. Durkin."

Other facts pertaining to insurance proceeds paid into the estate of each decedent under the provisions of the Uniform Simultaneous Death Act, and that both estates were solvent were also stipulated. There was no issue of the marriage.

The administrator denies any liability of the estate because of the common-law duty and obligation of the husband for the funeral expenses of his deceased wife. Claimant would justify his claim against the estate on the Married Women's Separate Property Acts and the Uniform Simultaneous Death Act. Applying any of such principles of law to the facts will not necessarily decide the question in controversy.

From a consideration of the facts, the real and decisive question to be answered is: May an undertaker, who has buried decedent, enforce his claim for such services against the estate, notwithstanding decedent's marriage status at the time of death? The question is answered in the affirmative.

This question was virtually answered in Darmody's Estate, 6 W. N. C. 487, 13 Phila. 207, 36 Leg. Int. 96 (Penrose, J., 1879). Speaking of the duties of a personal representative of a deceased married woman, Judge Penrose stated:

"Of the duties imposed upon him first is the burial of the decedent. The right to make the necessary contract for this purpose, and to apply the assets in his hands, in discharge of the obligation thus created, follows as a matter of course.

"The paramount duty of the husband, however, as between himself and his wife's estate, still remains . . .

"No argument is furnished against this doctrine by the case of Lawall v. Kreidler (3 Rawle 300) . . .

"If the law be as we have stated, it follows that though the undertaker, in such a case as the present, may recover from the wife's executor . . . the executor may in turn recover from the husband."

Common law imposed upon the executor or administrator, as his first obligation, the duty of burying the deceased: Pettigrew v. Pettigrew, 207 Pa. 313; Kreeger's Estate, 277 Pa. 326, 329; Hodge v. Cameron Exec., 132 Pa. Superior Ct. 1. The Fiduciaries Act of April 18, 1949, P. L. 512, sec. 622, makes funeral and burial costs a preferred charge on the estates of all decedents, without distinction as to their age, sex, or marriage status. It was so provided by the Act of April 19, 1794, sec. 14, 3 Sm. L. 143, the Act of February 24, 1834, P. L. 73, sec. 21, and the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 13. But the charge on all decedents' estates for reasonable funeral expenses and the duty of the personal representatives to pay, did not extinguish all or any common-law liability of others to pay for or reimburse the estate for such payment.

In 34 C. J. S., Executors and Administrators, §384, "Funeral Expenses", pages 135 and 136, it is stated:

"Although at common law the husband alone was liable for the funeral expenses of his deceased wife, see C. J. S., title Husband and Wife, §61, also 30 C. J., p. 606, note 77, and although in some jurisdictions it is held that her estate is not primarily liable therefor, (note 54). . . ."

The Pensylvania cases cited in note 54 are controversies where the husband had paid the funeral expenses and sought reimbursement from the personal representative, or the husband in the capacity of personal representative took credit for such expenses to the detriment of other interested parties. The cases are not contra to the elective right of the undertaker to make claim directly against the estate.

It is not meant to say that an undertaker can fasten the ultimate liability on the estate of a deceased married woman by proceeding against it in the first instance. Ultimate liability is not a matter with which he is concerned.

". . . The law, on equitable principles and grounds of public policy, imposes on the estate of every deceased person a liability for the reasonable cost of burying the body, usually designated as funeral expenses . . . [Cases cited]. Being a matter which cannot be delayed, and ought not be preceded by unseemly controversy, the law gives the undertaker who performs the service a right to assert his claim, in the first instance, at his election against the estate of the decedent thus providing a means for securing prompt service, by relieving the one called upon to render the same from determining at his peril from what source he must make collection, and of the necessity of possible litigation to exhaust one before proceeding against another . . .": Phillips et al. v. Tribbey, et al., 82 Ind. App. 68, 141 N. E. 262.

As in the instant case, should this undertaker risk nonpayment for his services in burying the family victims of a common disaster for want of proof as to the sequence or simultaneity of the deaths? There are no presumptions to aid him. The Uniform Simultaneous Death Act is not applicable to the matter; the purpose of the act is to make uniform the law on disposition of property and distribution of insurance proceeds. In the instant controversy, the act emphasized the undertaker's problem.

In support of the claim, the Married Women's Emancipation Acts of this Commonwealth were cited. These acts benefited married women, and there is doubt absolute that the same acts emancipated married men from their common-law duties.

Determination as to whether the ultimate liability for funeral expenses of decedent, under the facts as presented, would rest on the estate of the deceased husband is not essential to the disposition of the question in this case. Any opinion would be obiter dictum. His estate is not before the court for audit.

### Conclusion

The claim of T. J. Kenny, undertaker, against the estate of decedent for her funeral services is valid to that amount as shall be found reasonable upon the testimony to be presented.

### Order

Now, March 4, 1953, in accordance with the above opinion, it is ordered that a hearing on the matter as indicated therein is set for March 18, 1953, at 10 a.m., subject to another day certain as agreed upon by the parties with the approval of the court.