## Antonitis v. McCormick

*James P. Blaum*, for plaintiff.
*Thomas P. Kennedy*, for defendant.

BIGELOW, *J.*, May 20, 1977 — In this equity action, plaintiff, a widow, by amended complaint filed August 6, 1976, requests a decree from the Court of Common Pleas of Luzerne County directing that the Most Reverend J. Carroll McCormick, Bishop of the Roman Catholic Diocese of Scranton, allow disinterment of her deceased husband's body from St. Mary's Cemetery, Pringle, Luzerne County, Pa., that the Court of Common Pleas of Luzerne County direct that plaintiff be permitted to take and transport her late husband's body from said St. Mary's Cemetery to Denison Cemetery, Swoyersville, Luzerne County, and to have this body reinterred at Lot No. E Y2 36, grave No. 3 or 4 of said Denison Cemetery.

Bishop McCormick, through counsel, avers that the decree plaintiff seeks is violative of the laws, rules and regulations of the Diocese of Scranton and the laws of the Commonwealth of Pennsylvania, and, therefore, requests the court to dismiss plaintiff's amended complaint and to enter judgment in his favor.

Plaintiff, in her answer to defendant's new matter, denies that the requested disinterment and reburial would violate the laws, rules and regulations of the Diocese of Scranton and the laws of the Commonwealth of Pennsylvania and avers that a court-ordered disinterment would be in conformity with the laws, rules and regulations of both the Diocese of Scranton and the laws of the Commonwealth of Pennsylvania.

The dispute was heard in equity court on February 23, 1977, at the conclusion of which the hearing judge closed the record and requested counsel to furnish briefs in support of their client's respective positions within two weeks. These briefs were forthcoming as requested.

The trial court is required to resolve such diverse points of view as:

"In light of the law as cited in her trial brief and in this document, and considering the fact that the Diocesan Statutes do not themselves forbid reinterments in nonsectarian cemeteries and since this Bishop of the Scranton Diocese refuses as a matter of course to allow such disinterments and in view of the fact that large numbers of Catholics are buried in the Denison Cemetery with Christian burial rights, the Plaintiff contends that she has been arbitrarily and capriciously denied approval of the reinterment of the remains of ANTHONY ANTONITIS to the Dension Cemetery." Plain-

tiff's summary (post-trial brief), p. 8, submitted by James P. Blaum, Esquire, Attorney for Plaintiff.

and

"Plaintiff's case fails to meet the heavy burden imposed by the decisional law cited in this brief . . . The Defendant, Bishop J. Carroll McCormick, vigorously and strennously (sic) objects to disinterment in this case. . . . The Catholic Church, through the Bishop and Father Norkunas, has offered and continues to offer a generous, reasonable and proper solution to the problem, and that is a free burial lot next to Plaintiff's husband in St. Mary's Cemetery.

"A decision compelling the Bishop to permit exhumation contrary to Statute 72 vesting that power in him exclusively is fraught with constitutional objections, the most important of which is that such a decision would constitute an invasion by civil authority of the rights of the Church protected by the First and Fourteenth Amendments of the United States Constitution."

Memorandum of law on behalf of defendant (post-trial), p. 12, submitted by Thomas P. Kennedy, Esquire, Attorney for Defendant.

\* \* \* \* \*

## DISCUSSION

Whatever Mrs. Antonitis' options for the place of his interment were at the death of her husband, she elected to seek burial of her husband in the Roman Catholic parish cemetery in which his parents were buried. The pastor of the church which owned that cemetery did not encourage plaintiff's request, as his parish cemetery was small, and neither plaintiff nor her husband were members of his parish, but plaintiff persisted, and the pastor

acquiesced, sold plaintiff the gravesite she then desired and plaintiff's husband was buried in that grave. A week later, plaintiff advised this pastor that she had misrepresented her husband's desires which, in fact, were that he and she be buried in a nonsectarian cemetery (Denison Cemetery) near their home, and she requested permission to disinter her husband's remains from St. Mary's Cemetery and to reinter his remains in Denison Cemetery in which she had purchased two graves subsequent to her husband's funeral. Denied this request by the parish priest who managed the cemetery in which her husband was buried, and referred to her husband's priest, Monsignor Polcha, who, in turn, subsequently conveyed to her the rejection by the Director of Diocesan Cemeteries, acting for the Bishop, of her request, plaintiff unsuccessfully sought the approbation of the Pope, and finally, instituted this action in equity to compel the Bishop to permit the disinterment of her husband's remains and the reinterment thereof in Denison Cemetery.

In this litigation, the issue is not the right of the widow to control the original interment of her deceased husband's remains but is whether, under the facts of this case, she has an enforceable right to require the Bishop to accede to her demand for disinterment from a Catholic cemetery for reinterment in a nonsectarian cemetery.

In an equity action in many ways similar to this dispute, the Court of Common Pleas of Allegheny County refused a request that defendant Catholic Cemeteries Association be restrained from preventing the removal of the remains of a deceased wife by her surviving husband from a Catholic Diocesan Cemetery of the Diocese of Pittsburgh

and reburial in a nonsectarian cemetery, the hearing judge determining that the decision of the Bishop of Pittsburgh refusing plaintiff's request for disinterment from consecrated or solemnly blessed ground in the Diocesan Cemetery for reinterment in the nonsectarian cemetery in ground which would not be blessed was valid and binding and, therefore, dismissed the complaint in equity: Intorre et al. v. The Catholic Cemeteries Assn. of the Diocese of Pittsburgh, 112 Pitts.L.J. 510 (1963). In that equity action, the hearing judge found as fact that there was no evidence to support the husband's claim that his wife made any statements that she wanted to be buried in the nonsectarian cemetery after the designation of the Diocesan Cemetery for the district in which they lived. In the present case, plaintiff claimed and testified that her husband wanted both himself and plaintiff to be buried in the nonsectarian cemetery, and this testimony was corroborated by Mrs. Nell Molesky, a friend of plaintiff. In Intorre, supra, plaintiff was convinced by the undertaker to bury his deceased wife in the Catholic cemetery; in the present case, no one influenced plaintiff to bury her deceased husband in St. Mary's cemetery; in fact, it is clear that Father Norkunas was reluctant to permit the burial as the deceased was not a member of his parish, and he also questioned plaintiff as to her plans for her eventual interment and was advised by plaintiff that she would be buried with her parents in a cemetery in Swoyersville. At that point, plaintiff had represented to Father Norkunas that her deceased husband should be buried with his parents in St. Mary's Cemetery and she would be buried with her parents in another cemetery. The following week

she spoke again with Father Norkunas, admitted that she had lied as to her husband's burial request and asked that his remains be disinterred from St. Mary's Cemetery for reinterment at Denison Cemetery in which, according to her testimony, corroborated by her friend, Mrs. Molesky, her deceased husband had specifically stated he wished to be buried. At that point, plaintiff confronted the Diocese of Scranton which refused to accede to her request and has made several offers to her which would permit her eventual burial with her husband's remains in any Catholic Cemetery of her choice, including St. Mary's Cemetery. The Church, thus, does not oppose and reject all or any disinterment but does reject the requested disinterment from a Catholic Cemetery for reinterment in a nonsectarian cemetery.

Thus, a civil court is requested to resolve a dispute between a lay member of the Roman Catholic Church and the Bishop of the Scranton Diocese of that Church. As noted above, a similar dispute was resolved in favor of the Diocese of Pittsburgh in Intorre, supra, in 1963. There are no appellate court decisions subsequent to that decision which in any way modify that decision and the applicable authorities cited therein, i.e.:

(1) "The reinterment involving the removal of the body to another locality stands upon a different footing. The presumption is against a change or removal and will be permitted only in rare circumstances. It is a privilege to be accorded by a court of equity in the exercise of a sound and wise discretion." Citing: Pettigrew v. Pettigrew, 207 Pa. 313, 56 Atl. 878 (1904); Puckey v. Blake, 306 Pa. 374, 160 Atl. 222 (1932); Leschey v. Leschey, 374 Pa. 350, 197 A.2d 784 (1953); Ingraffia v. Dougherty,

29 Northamp. 294 (1944). (To this array of authority should be added the unreported decision in Nell A. Koplovitz, Petitioner v. Chisuk Emuna Cemetery, C.C.P. Dauphin County, Equity No. 3229 of 1973.)

(2) "While we sympathize with the plaintiff and understand his feelings which have prompted him to bring this action, the law requires that in deciding a case of this kind, the interests of the public, the deceased and the Church are all to be considered, as well as the interests of the spouse and next of kin." (Intorre, supra, page 513).

(3) "There is another interest which must be weighed which was not considered in the Pettigrew case nor in any of the appellate court cases previously cited, viz, the interest of the ecclesiastical and cemetery authorities."

"Where ecclesiastical restrictions are present, the court will give them due weight when not violative of the civil law. Canovaro v. Brothers of the Order of Hermits of St. Augustine, 326 Pa. 76."

"The rules, regulations, usages or corporate requirements [of] religious denominations or organizations relative to the right of sepulcher have been written into the law of the State by the Act of June 20, 1935, P.L. 353 (10 P.S. 81), Ingraffia v. Dougherty, 29 Northampton 294; Roseburgh v. The Calvary Cemetery Association, 73 Pitts.L.J. 228." (Intorre, supra, page 514.)

Similar sympathy for the desire of a widow to be near the body of her deceased husband was expressed by the Dauphin County Court of Common Pleas in Koplovitz, supra, in which that court stated that, as in this case, for several reasons, including "strenuous opposition from the Chisuk Emuna Cemetery Association, who argues that

the proposal to reinter is contrary to the written rules and regulations of the cemetery association, the laws of the Jewish religion, and the laws of Pennsylvania," and "plaintiff's initial concurrence in the burial site," it was clear that the body should not be removed, and so ruled on May 8, 1974.

In an opinion which examined many authorities relative to the removal of a body from its final sepulcher, the late President Judge Pinola, of this court, noted that the right to require removal of the remains of a decedent does not exist, unless removal is made necessary by unusual circumstances, and commented that in the case there at issue there was not even an allegation of necessity by unusual circumstances: Zale v. Koons, 56 Luz. 71 (1965); 38 D. & C. 2d 583 (1965).

Thus, while the resolution of this dispute is within the jurisdiction of this court sitting in equity (Puckey v. Blake, 306 Pa. 374), it is quite evident that the court in deciding such a dispute as this is required to afford due consideration to the rules of the religious organization involved here, the Roman Catholic Diocese of Scranton which vigorously opposes the requested disinterment, although also willing to accede to a disinterment to another Catholic cemetery to accommodate part of plaintiff's wishes, i.e., that she and her deceased husband be buried in adjacent graves.

After considering all of the findings of fact and the authorities cited above, the hearing judge determines the following

## CONCLUSIONS OF LAW

1. The cemetery of Saint Mary Annunciation Church in which plaintiff's deceased husband

was buried at the specific request of plaintiff is a cemetery, disinterment from which is governed by the statutes of the Diocese of Scranton which vest the decision as to requests for disinterment in the Bishop of the Diocese of Scranton of the Roman Catholic Church or his designated agent, here the Director of Diocesan Cemeteries.

2. The refusal of plaintiff's request by the diocesan authorities was in conformity to, and authorized by, the statutes of the Diocese of Scranton which this court is required' to recognize in this equity action.

3. The fact that plaintiff misrepresented her deceased husband's desire as to burial to Father Norkunas in order to obtain the burial in Saint Mary's Cemetery is not one which creates or supports a conclusion of necessity founded upon unusual circumstances justifying interference with the ruling of the Bishop of the Diocese of Scranton and his designate refusing plaintiff's request for disinterment from Saint Mary's Cemetery for reinterment in Denison Cemetery.

4. Under the facts of this litigation, the prayer of plaintiff must be denied and her complaint in equity must be dismissed.

## DECREE NISI

The amended complaint of plaintiff filed August 6, 1976, hereby is dismissed and her prayer for relief hereby is denied. Each party is to pay his or her costs.

The prothonotary is directed to notify counsel of record of the entry of this decree nisi pursuant to Pa. R.C.P. 1517(b).

If exceptions to this decree nisi are not filed within the prescribed time, the prothonotary shall enter this decree nisi as the final decree.