## Boyd v. Gwyn et al.

*Injunction—Custody of decedent's body—Conflict between daughter and sons.*

As between a daughter, who had maintained close filial relations with her deceased father for the seventeen years preceding his death and had nursed him at her home in Philadelphia during his last illness, seeking to bury him in the family lot at Nashville, Tennessee, in which town he had been born and raised, and his sons who, for twenty years preceding his death, had entertained no interest in, or friendship or affection for him, and after his death insisted upon his burial among strangers in Philadelphia, the custody of the body was awarded to the daughter and the sons restrained from interfering or attempting to interfere with her disposition of it.

Bill for injunction. C. P. No. 2, Phila. Co., March T., 1925, No. 15498, in Equity.

*William K. De Victor,* for plaintiff; *Malvin H. Reinheimer,* for defendants.

GORDON, Jr., J., May 28, 1925.—This litigation between a daughter and two of the sons of Thomas A. Gwyn, deceased, is the outcome of an unseemly quarrel over the disposition of the dead body of their father.

Thomas A. Gwyn, a native of Tennessee, died on Dec. 18, 1924, in the City of Philadelphia, at the home of the complainant, Annie Gwyn Boyd. He is survived by five children, three sons and two daughters, and by their mother, from whom he was divorced some eighteen years ago. Of the five children, the complainant is the oldest, the defendant, Henry L. Gwyn, is the second oldest, and the defendant, Allie L. Gwyn, is the youngest. The remaining two children, Eva R. Thompson and Thomas R. Gwyn, live in Nashville, Tennessee, and do not figure in this litigation. The defendants, Henry L. Gwyn and Allie L. Gwyn, are, and at the time of their father's death were, residents of the City of Philadelphia, living at an address other than their sister's. After the death of Mr. Gwyn, the complainant, Annie Gwyn Boyd, and the defendant, Henry L. Gwyn, agreed that their father's body should be buried in Nashville, Tennessee. Arrangements had been made for this purpose; tickets had been purchased and all the necessary formalities perfected to transport the body to Nashville, when, because of the illness of the complainant, these plans had to be temporarily postponed, and the body was placed in a receiving vault of the West Laurel Hill Cemetery Company, the third defendant in this proceeding, which, by answer filed, disclaims any interest in the controversy, and submits itself to the decision of the court.

It would seem from the evidence that, up to the time when the father's body was placed in the receiving vault, Mrs. Boyd and her brothers were in agreement respecting its disposition. Later, however, the brothers refused to consent to the removal of the body to Nashville. They demanded that it be buried in Philadelphia, and notified the cemetery company not to permit the sister to remove it. The children being unable amicably to adjust their differences respecting the disposition of their father's body, the complainant has brought this proceeding for the purpose of determining their respective rights to the possession of it.

A careful search of the authorities has disclosed no case in this State in which rights in a dead body have been adjudicated between kin of the same degree of relationship, and none has been called to our attention by counsel. In the leading case of Pettigrew *v.* Pettigrew, 207 Pa. 313, however, general rules for determining disputes of this character between kin of different degrees of relationship have been laid down, and the considerations which

should guide the chancellor in determining the right to the possession and disposition of disputed bodies are pointed out. These rules, as announced by our Supreme Court, are as follows:

"The result of a full examination of the subject is that there is no universal rule applicable alike to all cases, but each must be considered in equity on its own merits, having due regard to the interests of the public, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association.

"Subject to this general result, it may be laid down, first, that the paramount right is in the surviving husband or widow, and if the parties were living in the normal relations of marriage, it will require a very strong case to justify a court interfering with the wish of the survivor.

"Secondly, if there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified, it may be, by circumstances of special intimacy or association with the decedent.

"Thirdly, how far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes, especially if strongly and recently expressed, should usually prevail.

"Fourthly, with regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent, and reserving always the right of the court to require reasonable cause to be shown for it."

These rules do not prescribe any method of determining disputes between kin of the same degree of relationship. The principles, however, which governed the formulation of them are equally applicable in determining this question. In Fox v. Gordon, 16 Phila. 185, cited with approval in Pettigrew v. Pettigrew, Judge Thayer said that the determination must rest ". . . upon considerations arising partly out of the domestic relations, . . . partly out of the sentiment so universal . . . that the dead should repose in some spot where they will be secure from profanation; partly out of what is demanded by society for the preservation of the public health, morality and decency, and partly often out of what is required by a proper respect for, and observance of, the wishes of the departed themselves. . . . . It may be laid down as a general proposition, however, deducible from all the adjudicated cases upon this subject, as well as from the opinions of the most learned writers, that where the relations subsisting between husband and wife and parent and child are of a normal character, they have respectively the right to determine, to the exclusion of all others, the place in which shall repose the remains of those who were nearer and dearer to them in life than they were to any others, and in the absence of these relationships, the same right belongs to the next of kin of the deceased."

It is unfortunate in the present case that brothers and sister should be so at variance over the disposition of a father's body that they needs must resort to the court for the determination of a matter which good taste and ordinary respect for the dead demand should be amicably adjusted between them. Litigation of this character fortunately has seldom arisen in legal history, and we cannot refrain from regretting that these parties should have been unwilling, especially in view of facts and circumstances which hereafter must be noted, to amicably settle their differences. However, since the brothers have, by their attitude and conduct, forced the sister to appeal to us to settle the dispute, we will decide the matter with as little exposure as possible of certain

events of a personal nature in this dead man's life to which the necessities of a decision compel us regretfully to refer.

Thomas A. Gwyn, the deceased, was born and raised in or near the City of Nashville, Tennessee. In a cemetery in Nashville are buried his mother, his father, two of his children, and all his known deceased relatives; and it is in the cemetery in which his blood relatives lie that his daughter desires to bury him. He was married and lived during his married life in Nashville, where all of his children appear to have been born and raised. About seventeen years before his death private difficulties of some kind arose, the nature of which we have not inquired into, and do not consider it necessary to discover, which resulted in his leaving his wife and children, his wife later securing a divorce. It does not clearly appear where the deceased lived after leaving Nashville. It is certain, at any rate, that he lived in Louisiana; for after his daughter's marriage she removed to that state and lived not far from him. She maintained frequent communication with him during the last seventeen years of his life, and on Sept. 8, 1924, he came to this city, to which Mrs. Boyd and her husband had removed during the war, took up his residence in her home, and there died on the 18th of the following December. There appears to have been no communication between the divorced wife and the deceased after the separation which resulted in the divorce. This silence was maintained also between the deceased and his two sons. He did not communicate with them, nor did either of them communicate with their father, or seek to do so, between the time he left Nashville and his arrival at his daughter's house in Philadelphia, about three months before his death, save upon one occasion, when they seem to have been repulsed by him. It was apparent from their evidence and from their manner upon the witness-stand that, whatever may have been the cause of the trouble between the father and mother, or wherever the blame for it may have rested, the two sons have, for almost twenty years, entertained no interest in, or friendship or affection for, their father. On the contrary, they have studiously nourished feelings of bitter and vengeful animosity toward him, which have persisted after his death, and which we are satisfied are the motives actuating them in their efforts to prevent the burial of his body in his native state. The only reason stated by the defendants for their objection to the burial of their father in Nashville is their alleged fear that their mother, who is still living there, may be thereby humiliated and exposed to the scorn of her friends and neighbors, and her health and life thus endangered. While, of course, this divorced wife's wishes have no direct bearing upon the issue before us, the fact that in a letter written in May, 1925, to her daughter, she severely criticised her sons for their interference with the final burial of their father, and impliedly, at least, expressed a willingness that he should be buried in Nashville, discloses the unsubstantial and insincere character of their objection. While they are disingenuously expressing fears of the effect of the burial in Nashville upon their mother, she is chiding them for their attitude in the matter, and, in a spirit of Christian forgiveness, is begging them to spare her the humiliation and shame of their own unseemly conduct.

Reference to the decisions of other jurisdictions discloses some authorities which give a preference to sons over daughters in the disposition of a parent's body. This probably was the rule in ancient times, when the law recognized rights in males superior to females, especially in matters involving family and property rights. Had this question arisen here fifty or a hundred years ago, the same rule might have been adopted by our courts. But we see no reason for adopting it to-day, when, by constitutional amendment and mod-

Boyd *v.* Gwyn et al.

ern legal development, sex has ceased to be a factor in the determination of woman's legal rights and status.

Viewing the case, therefore, from the standpoint of the equities of the parties, we find nothing to justify us in awarding to the sons the custody and right to dispose of this body, while every consideration of justice and of equity moves us to award it to the daughter. During the last seventeen years, she alone appears to have entertained sentiments of dutiful respect and affection for her father; and to her only does he seem to have exhibited a paternal interest or regard. In the closing days of his life she was the one to whom he turned. It was she who received him in her home, nursed him in his last illness, and was in possession of his body when he died. The spot which she has chosen for his burial is a natural and fitting place to bury him—his boyhood home and the soil which holds his parents and his blood—and probably would have been his own choice, had he expressed a wish upon the subject in his last moments.

On the other hand, the sons seek to bury him in foreign ground and among strangers. As already indicated, they entertain a bitter and lasting hatred toward him. They were indifferent to his welfare in life, antagonistic to him in every respect, and we are confident that the motives which prompt this belated assertion of rights in his body are vengeful and unworthy. We do not credit their statements that they wish his body buried in Philadelphia, where they expect to live, so that they may visit and care for his grave. They are consumed with a burning desire to wreak a posthumous vengeance upon him by preventing his ashes from resting peacefully beside his parents and among his own people. We cannot lend ourselves to the accomplishment of so malign a purpose. Decent respect for the dead requires us to disregard the wishes of the sons and to award the body to his daughter, Mrs. Annie Gwyn Boyd, the complainant, for proper burial.

The parties have agreed that, in view of the nature of the proceeding, the case shall be considered as on final hearing and a final decision rendered.

We, therefore, enter the following decree:

And now, to wit, May 28, 1925, this cause having come on to be heard at this term of court, upon consideration thereof, it is ordered, adjudged and decreed:

1. That Annie Gwyn Boyd, the complainant, is entitled to have and receive sole possession of the body of her father, Thomas A. Gwyn, for burial, and the same is hereby awarded to her.

2. That the defendants, Henry L. Gwyn and Allie L. Gwyn, be, and they are hereby, restrained from disposing, or attempting to dispose, of the body of the said Thomas A. Gwyn, deceased, or from interfering, or attempting to interfere, in any manner with the said Annie Gwyn Boyd, the complainant, in the sole possession and disposition of the body of the said Thomas A. Gwyn, deceased, herein awarded to her.

3. That the defendant, the West Laurel Hill Cemetery Company, Incorporated, be, and it is hereby, ordered and directed to hold and deliver the said body of Thomas A. Gwyn, deceased, upon the sole order of the said complainant, Annie Gwyn Boyd.

4. That the defendants, Henry L. Gwyn and Allie L. Gwyn, pay the costs of this proceeding.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.