## Henry's Estate

*Groman & Rapoport*, for exceptants;   *Oliver W. Frey*, for accountants.

GEARHART, P. J., January 19, 1933.—This is the audit of the first and partial account of George W. Haines, Lizzie J. Horlacher and Harvey W. Haines, executors and trustees under the last will and testament of Sarah A. Henry, deceased. The account came before us for audit on November 16, 1932. Exceptions were filed to the account by Allen Henry, surviving spouse of the testatrix, on November 10, 1932. An answer was filed on November 25, 1932, and finally, after several continuances, the matter raised by the exceptions was heard by us on January 12, 1933.

The estate consists principally of two pieces of real estate, one of which is occupied by the surviving spouse, and the other is rented. The will of the tes-

tatrix directed a conversion of the property and payment of the income to the surviving spouse for life. The testimony showed that the property was not converted at the instance of the life tenant, who did not wish the property sold, preferring to occupy one of the properties himself and receive the income from the other.

We will discuss the exceptions in the order in which they appear in the petition.

Exception 1 is the chief source of contention. The exceptant claims that he loaned the executors the sum of $373.15, and asks us to surcharge them with this amount. The exceptant himself testified that this was the amount he paid the undertaker for his wife's burial. He admits he paid the undertaker himself, but he contends that this properly should be paid by the executors of the estate. He testified that he advanced this money as a loan.

The primary duty to bury a deceased wife is on the surviving husband, and he can only be relieved of this obligation by a direction contained in the will of his wife that the funeral expenses shall be borne by her estate. Of course, where the husband is insolvent and the wife dies possessed of a separate estate, he is relieved of the primary duty: Garren's Estate, 17 Dist. R. 307.

Judge Penrose said in Williams' Estate, 14 Dist. R. 407:

"While a direction in the will of a married woman for payment of her funeral expenses will transfer the primary liability from the husband, upon whom it would otherwise rest, to her estate, it will not, as against creditors or persons acquiring interests under the will, justify the husband,—though his rights with regard to her burial are paramount (Pettigrew v. Pettigrew, 207 Pa. 313),—in subjecting her estate to extravagant expenses, disproportioned to its size."

Where a testatrix in her will directs the payment of her debts and funeral expenses, a surviving husband who elects against the will cannot claim the benefit of that direction, which, being in relief of his legal liability, is in effect a legacy to him: Melot's Estate, 231 Pa. 520; Mitchell's Estate, 79 Pa. Superior Ct. 208.

In the case before us the testatrix directed that her debts and funeral expenses be paid. The husband has not elected to take against the will and we are of the opinion that the amount expended for funeral expenses, viz., $373.15, was reasonable under the circumstances, and he is entitled to be reimbursed for this expenditure. We award this sum to him, with interest from January 1, 1930, and direct the executors to pay this to him.

The exceptant is 84 years of age, and while the testimony did not directly show that he was in need of funds for maintenance, we gathered the impression that he was. We call the attention of the accountants to the following provision of the will: "And I further order that in the event the income from my estate is not sufficient to maintain my husband, my said trustees shall turn over unto him so much of the principal as in their discretion seems proper."

It may well be that it will necessitate the selling or mortgaging of one of the parcels of real estate to pay the claim which we have allowed, as well as to carry out the provisions of the will which we have just quoted. If it does, the same should be mortgaged or sold, as the will invests the executors and trustees with abundant authority so to do. Exception 1 is sustained.

Exception 2 relates to payment of the inheritance tax on the estate in full. The tax paid was $179.17. The exceptant argues that by paying the entire amount of tax due on the life interest, as well as on the remainder, the corpus has been depleted; thus he is deprived of income to which he is entitled under the will. The accountants explain that they paid the entire tax at this time because the exceptant originally intended taking against the will. We believe the accountants, and while the conduct of the 84-year-old spouse caused them

to pay the tax in full, the fact remains that he did not elect to take against the will of his wife, and the corpus should not be diminished to his detriment.

The Act of June 20, 1919, P. L. 521, sec. 3, provides, inter alia:

"Where there is a transfer of property by a devise . . . liable to the tax hereinbefore imposed, which devise . . . is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates . . . the tax on such estate shall not be payable . . . until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate or estates for years."

The tax on the remainder was not due until the expiration of the life estate. The accountants in this case did what the executors did in Constable's Estate, 299 Pa. 509, where Mr. Justice Schaffer for the court stated (p. 514):

"Appellant [executor] must, however, be held for the equivalent of the tax on the remainder. His payment of this was gratuitous. The act does not require remaindermen to pay the tax on their interest until they come into possession. Hence this amount cannot be charged against them, nor can the estate be made to pay for it."

In this case the life estate and the remainders were not appraised separately as directed by the act; we will therefore adjust the tax equitably. See Constable's Estate, supra.

The net amount on which tax was paid is $9,429.79. The exceptant at the time tax was paid was aged 81 years. He has a life interest only. The mortality tables value his estate at $1,538.47, on which the tax to the Commonwealth at 2 percent amounts to $30.76. The total tax paid was $179.17. The accountants paid on account of the remainder $148.40. We will therefore surcharge them with this sum of $148.40. It is pertinent to remark that with the exception of the sum of $1,000 which goes to a grandchild, the three accountants are the remaindermen who by the terms of the will are entitled to the corpus at the expiration of the life interest.

The tax of $30.76 being the tax on the life estate of the exceptant, the accountants will pay into the corpus from earned income: Wanner's Estate, 4 D. & C. 721; Estate of S. J. Christian, 18 Phila. 32; Richardson's Estate, 12 Phila. 32.

The matter of the tax which the accountants gratuitously paid on the $1,000 legacy to the granddaughter, Mabel Bleibler, can be equitably adjusted at some future accounting following the termination of the life estate. This exception is sustained.

Exception 3 relates to the accountants' commission of $50.75. We find that the accountants have claimed commission only on the sum of $1,015.04, which represents the amount they are debited with in the personal account. We find that the accountants have carried on the administration of the estate in good faith, charged themselves with all properties received, and the estate has suffered no loss through their management. Under the circumstances, it would be inequitable to deny them their compensation. Exception 3 is dismissed.

Exception 4 relates to certain expenditures made by the accountants for repairs to the real estate. An examination of the account shows that these expenditures were for taxes, several small items for plumbing, and several modest charges for repairing roof. The items for repairs aggregated $25.05. In short, they were expenditures made for keeping the premises in ordinary repair, and to us seem very reasonable. The one large expenditure of $73 was for wiring one of the houses. This was done at the request of the exceptant and

for his own convenience. He is hardly in position now to object. Exception 4 is without merit and is dismissed.

### Decree

Now, January 19, 1933, exceptions 1 and 2 to the account are sustained; exceptions 3 and 4 are dismissed. The account is confirmed, subject to the modifications as hereinbefore set forth; in the absence of exceptions filed within 10 days herefrom, such confirmation shall become absolute.

From Edwin L. Kohler, Allentown, Pa.