## - Kitchen v. Wilkinson, Appellant.

*Burial of the dead—Public burying ground—Suicide.*

Where the general public has acquired the right to use land as a burying ground, individuals cannot by staking off portions of the land into lots acquire any exclusive title therein ; nor can a neighboring church acquire any title to or control over the land, merely because numerous members of the church took part in improving the grounds from time to time. As long as any portion of the ground is unoccupied by graves, the community at large has the same interest in the land as those claiming to be owners of lots.

There is nothing in the law of Pennsylvania which prevents the body of a murderer and suicide from being buried in a public burial ground.

A decent burial is the right of every one. It is a right springing from the necessity of the case and is recognized in all well ordered communities. Considerations of propriety and public health require that the dead be decently disposed of. This does not imply the right to Christian burial with the services of a religious organization but to an orderly interment in some suitable place. Per HENDERSON, J.

*Burial of the dead—Right to control burial—Next of kin—Sister.*

Where a deceased person did not in his lifetime live with his wife, and no executor or administrator has been appointed over his estate, a sister of the deceased has the right to direct and control the burial of his dead body.

Argued Jan. 13, 1904. Appeal, No. 12, Jan. T., 1904, by defendants, from decree of C. P. Luzerne Co., March T., 1901, No. 2, on bill in equity in case of Mary A. Kitchen v. Stephen Wilkinson et al. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for an injunction to restrain defendants from interfering with the burial of the body of Ralph J. White in a public burying ground. Before DUNHAM, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

The court entered a decree in accordance with the prayer of the bill.

*Errors assigned* were the dismissal of various exceptions to the court's findings of fact and conclusions of law, and rulings on evidence.

*Q. A. Gates*, for appellants.—The defendants had a right to

protect their dead: Gumbert's App., 110 Pa. 496; Davidson v. Reed, 111 Ill. 167; Beatty v. Kurtz, 27 U. S. 566.

The defendants had a right to stake off lots: Pott v. School Directors of Pottsville, 42 Pa. 132.

Defendants had the right to object and interfere with the burial upon the ground that Ralph White was a murderer and suicide: Dwenger v. Geary, 113 Ind. 109 (14 N. E. Repr. 903); Craig v. Church, 88 Pa. 42; Page v. Symonds, 63 N. H. 17; Pierce v. Swan Point Cemetery, 10 R. I. 227; Hunter v. Trustees of Sandy Hill, 6 Hill, 407; Boyce v. Kalbaugh, 47 Md. 334; Smith v. Thompson, 55 Md. 5.

It was not shown that White had any property or that there was any reason why his widow should not exercise her undoubted first right to bury him. While it is not the right of the widow to remove the body after burial it is her right to bury him in the first instance. As to both these propositions we cite Wynkoop v. Wynkoop, 42 Pa. 293; Queen v. Stewart, 12 Ad. & El. 773; Hackett v. Hackett, 19 L. R. A. 558; Enos v. Snyder, 53 L. R. A. 221; McEntee v. Bonacum, 60 L. R. A. 440.

*John T. Lenahan,* with him *Richard B. Sheridan,* for appellee. —An individual by marking off space in a public burial ground for a family burial plot, does not acquire any right in the vacant ground thus marked off to the exclusion of the rest of the public having a right of interment in the graveyard: Hunter v. Sandy Hill, 6 Hill (N. Y.), 407.

An intention to dedicate may be presumed after twenty-one years' use by the public: Bush v. Johnston, 23 Pa. 209; Thompson v. Coal & Iron Co., 19 Atl. Repr. 346; Schenley v. Commonwealth, 36 Pa. 29; Commonwealth v. Cole, 26 Pa. 187; Commonwealth v. Llewellyn, 14 Pa. Superior Ct. 214.

Land may be dedicated for the purposes of a public burial ground: Hunter v. Trustees of Sandy Hill, 6 Hill (N. Y.), 407; Davidson v. Reed, 111 Ill. 167; 2 Dillon on Mun. Corp. sec. 648.

Continuous and notorious use of land for twenty years as a public burial place with the acquiescence of the owner affords presumptive evidence of its dedication for that purpose, and the owner is estopped from denying it and will be enjoined

from interfering with such use: Boyce v. Kalbaugh, 47 Md. 334; Davidson v. Reed, 111 Ill. 167; Gumbert's App., 110 Pa. 496.

An individual could not acquire any right as against the public. It is well settled that in Pennsylvania title cannot be acquired against the public by adverse possession: County of Susquehanna v. Deans, 33 Pa. 131; Kittanning Academy v. Brown, 41 Pa. 269; Com. v. Moorhead, 118 Pa. 344; Com. v. McDonald, 16 S. & R. 390.

A custom to bury as near relatives as possible is bad: Pierce v. Proprietors of Swan Point Cemetery, 10 Rhode Island, 227.

Ralph J. White, by reason of his crimes, was not deprived of the right of decent burial: 4 Blackstone's Com. p. 189; Kanavan's Case, 1 Maine, 226.

The contention that Ralph J. White not having died under plaintiff's roof, and that the fact that he left a wife, is fatal to plaintiff's right to maintain this bill, is untenable: Fox v. Gordon, 16 Phila. 185.

OPINION BY HENDERSON, J., July 28, 1904:

Among the findings of fact by the court below is the following: " More than sixty years ago the land of which the burial ground was composed was dedicated to the public for a public burial ground and from that time to the present period it has been openly, notoriously and continuously under claim of right and with the knowledge and consent of the owners of the fee used by the general public as a public burial ground for the purpose of burying their dead therein." The finding is fully justified by the evidence offered at the trial. As to a small part of the burial ground the dedication seems to have been somewhat later than the period stated in the conclusion of the court, but it was so long ago as not to affect the question involved.

The evidence also shows that the plaintiff and Ralph J. White were residents of the immediate vicinity of the burial place. No rights of heirs or grantees of the donor are involved. The right of burial exists therefore in favor of the body of Ralph J. White unless some sufficient reason is shown to the contrary arising outside of the public character of the burying ground.

Two reasons are given by the defendants why the burial should not be permitted :        ·

1. That all the ground in the cemetery has been already appropriated ; and,

2. That Ralph J. White was a murderer and suicide.

It is not alleged that the burial ground is all occupied by graves and the plot exhibited by the defendants shows that a considerable part of it is not so used.  It is said, however, that from time to time portions of the ground have been appropriated by individuals, boundaries being indicated by stakes or fences and that by such action the persons so appropriating the ground have acquired exclusive vested interests and that all the ground in the cemetery is so appropriated.  White was buried in ground said to be within the limits of a lot claimed by L. D. Pardington.  The way in which the lots were acquired appears from the testimony of George Wesley, one of the defendants :

Q. About the various lots that were allotted, how was that done, by the parties themselves?  A. Why, of late they usually come to me and have me go over with them, if they want to bury.  Q. Before then, how was it done—as long ago as you can remember?  A. Well, I don't know; they would go in and locate in a place where they did not interfere with anybody else and buried.  Q. When did you first take charge of this and how did you happen to take ·charge of this burial place?  A. Well, now, all the charge I have had of it—the people coming to me and requesting me—my living there I worked a good deal in that cemetery and I tried to keep it in a nice shape.  They knew that I understood it and they would come to me to help them select a suitable place for their burial ; more particularly when they was fixing to bury or starting a lot.  Mr. Wesley was an undertaker living in the community and his business induced him to take an interest in the cemetery.

L. D. Pardington gives the following account of the way in which he acquired a lot:        ·

Q. Tell us when you got that (lot) and how you got it. A. Well, I should judge, as nearly as I can remember, about four years ago, I went to Mr. Lewis's store in the first place and inquired.  I don't remember whether it was of him or his

wife, about this graveyard and I was directed to go to Mr. Wesley. I went there and spoke to him about it and he took me over to the graveyard and showed me this lot where I could bury and said, " Now, as you are a member of this church and intend to make your home here, there is a sufficient lot for you and your family. Q. Was it measured off and staked off? A. I could not say whether it was staked off at that time, or not.

Mr. Pardington buried a child in a corner of the ground which he called his lot.

The other evidence in the case upon this point would indicate that there was to some extent a designation of lots by persons using the burial ground, but it is quite evident upon an inspection of the plot submitted that the arrangement of lots was a comparatively recent action on the part of persons interested. The evidence leads very strongly to the conclusion that the marking out of the plots was done long after the rights of the public were acquired by reason of the dedication, and without authority from any one.

The evidence wholly fails to show any authority in the Christian church to regulate or control the burial ground and it may well be doubted under the evidence whether, as an organization, it ever undertook so to do. Numerous members of the church who were interested in the welfare of the community took part in improving the burial ground from time to time, but this appears to have been done by them as citizens rather than as members of the church. However that may be the church had no title to the burial ground and could not exercise legal control over it. The cases cited by the appellants are not authority for the proposition that the church had any legal control over the cemetery. In Gumbert's Appeal, 110 Pa. 496, there was a grant of land and a trust thereby created which the court sustained and enforced. In Davidson v. Reed, 111 Ill. 167, the right of persons having friends buried in the churchyard to prevent desecration was sustained ; this on the ground that they had an interest in the burial ground. In Beatty v. Kurtz, 27 U. S. 566, there was evidence upon which the court held that there was a parol gift to the congregation and therefore a property right. In the present case the right of the public was acquired long before the church existed at

all and it cannot upon any theory be said to have a legal interest in the property.

The right of individual members of the community is one of decent burial, but does not extend to the appropriation and withdrawal from the use of other members of the community of such portions of ground as the person appropriating may desire for anticipated requirements. The position of appellants that all the ground in the cemetery is divided into lots and that all the lots have been appropriated and that therefore burial rights can only be had through those claiming lots cannot be supported and, the facts in this case showing a large portion of the ground still unoccupied by graves, the community at large has the same interest in the burial place under the dedication by the donor which those have who claim to be the owners of lots. The trust created through the dedication would be defeated if the ground might be preëmpted and divided up by volunteers according to such division lines as they saw fit to establish. No burials have been had on some of the lots as shown in the plot and considerable unoccupied space remains on others. The appropriators of such spaces must have some other justification of their titles than the fact that they have driven stakes or established boundaries. So long as no one having a like interest interferes there is propriety in such an arrangement of the burial ground, but while burial space remains no one acquires, by such method, an exclusive right to more ground that is actually used for the purposes of decent burial. Such right may be acquired through a corporation or association or an individual having control of a burial place, but not in ground in which the whole community has a like interest.

No authority has been shown in support of the position of the defendants that the body of Ralph J. White was not entitled to decent burial in this cemetery because of the fact that he was a murderer and suicide. The harshness which once marked the treatment of the body of a suicide in England has found no place in the legislation of this commonwealth. Nor is it consonant with the spirit of the age or the moral sense of the people. A decent burial is the right of everyone. It is a right springing from the necessities of the case and is recognized in all well-ordered communities. Considerations of

propriety and public health require that the dead be decently disposed of.   This does not imply the right to Christian burial with the services of a religious organization, but to an orderly interment in some suitable place.

It cannot be successfully contended that the plaintiff might not lawfully bury the body of her brother.   The evidence shows that White had not been living with his wife for a considerable time.   What the cause of their separation was is not material in the present inquiry.   There was no administrator or executor upon whom the law would, in the first instance, cast the duty of burial.   Upon this sister, under the circumstances, as one of his near kindred, devolved the right if not the duty of burial.   The law as stated by Judge THAYER in Fox v. Gordon, 16 Phila. 185, has been recognized and approved in numerous cases: " It may be laid down as a general proposition, however deducible from all the adjudicated cases upon this subject, as well as from the opinions of the most learned writers, that where the relation subsisting between husband and wife and parent and child are of a normal character, they have respectively the right to determine to the exclusion of all others the place in which shall repose the remains of those who were nearer and dearer to them in life than they were to any others, and in the absence of these relationships the same right belongs to the next of kin of the deceased."   The right of the next of kin, under the circumstances, is recognized in Pettigrew v. Pettigrew, 207 Pa. 313.

No persons having any interest in the body objected or now object to the action of the plaintiff in burying her brother and the defendants are not in a position to question her right so to do.   None of the property rights of the defendants have been invaded nor has there been any interference with the burial places of their friends or kindred.

We are of the opinion, therefore, that under the law applicable to the case a correct conclusion was arrived at by the trial judge.

The decree is therefore affirmed.