## In re Morison

*Carr & Krauss*, for accountant.

FINLETTER, P. J., March 1, 1940.—The first and final account of the guardian of Matilda F. Morison, a feeble-

minded person, is presented to us for audit. Due notice has been given to all interested parties and no objection was made to the account as stated. It is, therefore, confirmed. It is sufficient for present purposes to say that the estate is insolvent, admitted claims existing which will exceed the balance in the hands of the accountant.

Among the claims is one by the Commonwealth for board and lodging of the ward in the Norristown Hospital, amounting to $463.21. We have, following the universal practice of many years, directed that $100 be set aside in the hands of the Norristown State Hospital Burial Fund to cover the burial expenses of the ward. The Commonwealth objects to this order and refers for vindication of its position to the County Institution District Law of June 24, 1937, P. L. 2017, which puts liability upon the county for the expense of burial of such persons as the ward, or, if the body is not claimed, provides that it shall be delivered to the Anatomical Board of the State.

We are not concerned with the dispute between the county and State about their several liabilities in this connection. They may adjust this between them either amicably or by litigation as they please.

As a court of chancery in charge of the estate of a lunatic, we are interested only in the welfare of our ward and the disposition of her estate.

Our jurisdiction over the estates of lunatics has the sanction of years of existence. It is one of the earliest subjects of the court of chancery.

"The jurisdiction . . . [over lunatics] is plenary, and potent to reach and afford relief in.every case where it may be necessary to preserve their estates and protect their interests": 10 R. C. L. 340 sec. 89; 19 Am. Jur. 144, 146, secs. 151, 154; Bispham's Principles of Equity (10th ed.), secs. 551, 553; 3 Story's Equity Jur. (14th ed.), secs. 1785-1791.

The latest application of it is provided for in the Act of May 28, 1907, P. L. 292, which is really only an ex-

pression of long-existing jurisdiction with perhaps the addition of a class of persons who are described as "feeble-minded" with respect to the management of their property, as to whom the act provides for a simpler practice than the proceedings providing for the appointment of a committee in lunacy.

The breadth of the jurisdiction of the court in the Act of 1907, supra, is shown by a reading of the fourth section of that act, which, in detail, provides for the complete control by the court of the property of the ward and its use in practically every exigency of life. In effect the statute substitutes the court and its judgment for that of the ward in the care and disposition of property. It provides first that the court and the guardian appointed by it shall have all the powers of a committee "on lunacy" and shall have full power over the guardian and may direct an allowance for the ward and for the support and maintenance of himself and his wife and children, the education of his minor children, sale, lease, or conveyance of any part of his real estate, if in the opinion of the court it is necessary for the purposes named, or where it is for the interest and advantage of the ward that the property shall be sold. In effect the court takes the place of the incapacitated ward in all dealings with property and family, the ward, however, remaining the equitable owner of the property.

The Commonwealth, while conceding that there is in the hands of the guardian property belonging to the ward sufficient to pay for her decent burial, insists that this shall be devoted to payment for her past expenses for board and lodging. The County Institution District Law of 1937, supra, is cited as authority for this claim. It reads, section 403:

"Except as otherwise provided by law, the local authorities of any institution district shall provide for the burial of any dependent who dies in the county or city, or any person who dies suddenly within the county or city, unless his body is claimed by a relative by blood or mar-

riage, or by a friend, or by his fraternal or veterans' organization, or by a charitable organization, or by the Anatomical Board of the State of Pennsylvania. No such burial shall cost more than seventy-five dollars."

Section 2 of the Act of April 22, 1937, P. L. 411, is also called to our attention. It relates to the disposition of unclaimed bodies. Counsel says:

"No more need be said of the importance and purpose of this Act than to quote its title: 'An Act for the promotion of medical science by the distribution and use of unclaimed human bodies for scientific purposes'."

In short, the Commonwealth soberly asks the chancellor, charged with the disposition of his ward's person and property, to use a fund which is presently in his hands in such a way as to send his ward to the dissecting table so that a hundred dollars worth of Commonwealth's bill for board and lodging may be paid; that is, that an ordinary debt without lien or special charge upon any property shall be paid rather than that the ward may have a decent burial. We do not think that the provision relieving the Commonwealth from such payments and putting them upon the county was intended to have any application to the distribution of an existing fund in the hands of a chancellor.

It has never been the policy of either the common law or the law of this State that ordinary debts shall have precedence over funeral expenses. The common law, even in its worst days, provided for the decent burial of human beings. The rule was that the master of the household in which the death occurred was responsible for burial expenses. In Wynkoop v. Wynkoop, 42 Pa. 293, 300, it is said:

"So universal is the right of sepulture, that the common law, as it seems, casts the duty of providing it, and of carrying to the grave, the dead body decently covered, upon the person under whose roof the death takes place".

In Kitchen v. Wilkinson, 26 Pa. Superior Ct. 75, it was observed:

"A decent burial is the right of every one. It is a right springing from the necessities of the case and is recognized in all well-ordered communities." See also Kreeger's Estate, 277 Pa. 326.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 13(a), 20 PS §501, gives the precedence to funeral expenses over all debts.

The only authority cited to us by the Commonwealth is Gaintner's Estate, 36 D. & C. 529. This case is not in point upon the subject we are discussing. It relates only to a question of practice and holds that the $300 exemption law does not apply in the distribution of the estates of lunatics.

We are of opinion, for the reasons above given, that as a court of chancery we have full power to provide for the decent burial of our ward.