## Baker's Estate

*Nelson P. Fegley*, for accountant.

*Paul P. Wisler*, for Commonwealth.

*Maxwell Strawbridge*, for Montgomery County Institution District.

DANNEHOWER, J., July 24, 1940.—On May 16, 1929, the Norristown-Penn Trust Company was appointed guardian of the estate of S. Wallace Baker, a weak-minded person. The ward is still living, and since 1908 has been and still is confined in the State Hospital for the Insane at Norristown, Pa.

On March 1, 1940, the guardian filed a first and final account, showing a balance of $3,209.96, which according to the proposed schedule of distribution was awarded as follows: "Norristown State Hospital for burial fund,

$200; Commonwealth of Pennsylvania, on account of claim for maintenance, $3,009.96."

On April 8, 1940, the Commonwealth of Pennsylvania filed an exception to this account, as follows:

"The sum of $200 set aside as a burial fund with the Norristown State Hospital as custodian or trustee of said fund, as the same appears in the schedule of distribution, is excessive, is more than should be allowed or set aside according to law, and the said burial fund should not be in excess of $100."

After argument before the court, this exception is pending for decision.

The Commonwealth of Pennsylvania has a claim for maintenance from January 8, 1908, to April 30, 1940, amounting to $6,002.63. The Institution District of Montgomery County also has a substantial claim for maintenance, and it was stipulated between the Commonwealth and the institution district that 55 percent of the balance on hand for distribution be awarded to the Commonwealth on account of its claim, and 45 percent be awarded to the Montgomery County Institution District.

The question for decision is: Where the estate of a living incompetent is insolvent by reason of the Commonwealth's and institution district's claims for maintenance in a public institution, will the court, having jurisdiction over the estate, in the exercise of its chancery powers, allow a reasonable amount to be retained by the guardian, or by the authorities of the public institution, for burial expenses; and is $200 for burial expenses a reasonable sum under the circumstances?

It must be clearly noted that the Commonwealth does not take the position that no sum should be set aside for burial expenses and that the Commonwealth should pauperize the living incompetent, but the contention of the Commonwealth in this case is that the sum retained for burial expenses should not exceed $100, and that $200 is excessive and unreasonable. The Commonwealth, therefore, admits that the court, by virtue of its plenary

jurisdiction over the estates of lunatics, has discretionary power with relation to the allowance of a reasonable sum for burial expenses and full power to provide a decent burial of its ward.

The Commonwealth relies upon the provisions of the County Institution District Law of June 24, 1937, P. L. 2017, sec. 403, wherein the local authorities of any institution district shall provide for the burial of any dependent who dies in the county, unless his body is claimed by relatives, friends, an organization, or by the State Anatomical Board, but "No such burial shall cost more than seventy-five dollars"; also upon section 2 of the Act of April 22, 1937, P. L. 411, wherein officials having charge of public institutions and dead bodies must immediately notify the State Anatomical Board, and if the body is unfit for anatomical purposes and is required to be buried at public expense, such expense "shall not be less than thirty-five dollars nor more than fifty dollars".

The Commonwealth, therefore, contends that, as the legislature has provided the sum of $50 in one and $75 in the other, for burial expenses of a body required to be buried at public expense, an allowance of $100, to be retained for burial expenses of a living insolvent incompetent, is a reasonable amount.

With this contention we cannot agree. The claim of the State and county for cost of maintenance is an ordinary debt without lien or special charge upon any property, and funeral expenses have been allowed preference in insolvent estates and by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 13(a).

The common law provided for the decent burial of human beings. Our Supreme Court, in Kreeger's Estate, 277 Pa. 326, 328 (1923), wrote:

" 'So universal is the right of sepulture, that the common law, as it seems, casts the duty of providing it, and of carrying to the grave, the dead body decently covered, upon the person under whose roof the death takes place; for such person cannot keep the body unburied, nor do

anything which prevents Christian burial; he cannot, therefore, cast it out, so as to expose the body to violation, or to offend the feelings or endanger the health of the living; and, for the same reason, he cannot carry the dead body uncovered to the grave' ".

The executor or administrator must bury the deceased in a manner suitable to the estate he leaves behind him, and such funeral expenses are placed, by the act of assembly, in the first class of preferred debts.

In Kitchen v. Wilkinson, 26 Pa. Superior Ct. 75, 80 (1904), it was observed:

"A decent burial is the right of everyone. It is a right springing from the necessities of the case and is recognized in all well-ordered communities."

In Colton's Estate, 56 Montg. 76 (1940), President Judge Holland, in a well-considered opinion, allowed the executor of an insolvent estate the sum of $300 for burial expenses; and in Hughes' Estate, 56 Montg. 81 (1940), where the estate was insolvent $5,335 gross, with a balance of $2,421 for distribution to preferred claims of $2,729, and general claims of $1,673, a claim of $681 for funeral expenses was, in the absence of any facts justifying that amount, deemed excessive, and reduced to $300.

In the very recent case of In re Morison, 37 D. & C. 694 (1940), the court, in exercise of its chancery power, allowed $100 from an insolvent deceased incompetent's estate for burial as a preferred claim.

In In re Stankiewicz, 13 Northumb. 266 (1936), Judge Cummings, where the Commonwealth's claim for maintenance was $1,110.73, and the balance in the guardian's hands for the incompetent ward, who was living and in a mental hospital because of having been gassed in the war, was $546.81, refused the Commonwealth's claim in full and refused to pauperize the ward, stating (p. 267):

". . . it was never the intention of the legislature of Pennsylvania to pauperize an unfortunate, and particularly one who has given his service to his country,

resulting in loss of mind." It is further stated, in the syllabus:

"The court has discretionary power with relation to the allowance of a claim by a State hospital for care, maintenance and treatment of an insane person, and where the testimony shows that the patient is now in a veterans' hospital and his guardian receives from the Veterans' Bureau $15.00 per month which it is obliged to pay to the institution where the veteran is now confined, and where the balance in the hands of the guardian is not sufficient, should he recover from his mental illness, to sustain him until he would be able to obtain employment, and scarcely sufficient to provide respectable burial should he not recover, the claim of the State hospital was not allowed."

In Gaintner's Estate, 36 D. & C. 529 (1939), the guardian of an incompetent filed an account during the lifetime of the ward, showing a balance of $1,580.12. The Commonwealth and Lancaster County presented claims of $356.57 and $3,347, respectively. The guardian claimed $300 exemption, so that the incompetent could receive a proper burial at death. The court held that it had no power to allow the claim for exemption.

In view of these decisions, it is unfortunate that some proper method has not been evolved whereby proper burial of incompetents could be insured, without undue complications. Under present conditions, the result is either that (1) the incompetent's estate is exhausted by the charges for maintenance and he must be buried a pauper, or his body delivered to the State Anatomical Board, unless some friend or relative comes to the rescue, or, in case of recovery, be penniless, or (2) a fund is retained by the guardian or officials of the institution, which, with its accumulations, may be too small or too large for appropriate burial, and which may possibly require the appointment of an administrator for disposition thereof.

Neither the Commonwealth nor the accountant has produced any testimony as to the cost of a proper burial,

but we certainly do not believe that $100 is reasonably sufficient for that purpose. The Commonwealth asks that the $200 allowance requested for burial expenses by the guardian be reduced to $100, so that it can be paid an additional hundred dollars' worth of board and lodging provided for an unfortunate whose entire estate has been depleted to pay the Commonwealth and the institution district. A reasonable allowance for the future burial of the incompetent is not only humane, but is in keeping with our fine traditions and due respect for the dead. The guardian has asked for an allowance of $200 to be paid to the Norristown State Hospital burial fund. We cannot see the wisdom of ordering the payment of this sum to the trustees or officials, when the incompetent has a duly-appointed and responsible guardian to take care of his estate, accountable to the court. The court does not wish to be understood to be setting a precedent, by deciding under the circumstances of the instant case, that $200 is a reasonable sum to be retained for burial expenses for all living insolvent incompetents, because the sum may be larger or smaller under different circumstances.

It was the custom and recognized practice years ago for the guardian to retain a sum of $200 or $300 for the appropriate burial of its incompetent ward, and the Commonwealth's representative invariably permitted the retention of a reasonable sum by the guardian for that purpose; whereupon said guardian notified the officials of the institution in writing, and upon the death or recovery of the ward the officials immediately communicated with the guardian.

As the guardian in its account has set aside $200, we are of the opinion that such sum is reasonable and that it should be retained by the duly-appointed guardian to await the death or recovery of the ward and the future order of the court.

And now, July 24, 1940, for the foregoing reasons, the exception filed by the Commonwealth to the guardian's account is dismissed, the account is confirmed absolutely,

the guardian is ordered to retain $200 for the future burial or recovery of the ward, and the balance for distribution, as shown by the account according to the written stipulation filed, is to be paid, 55 percent to the Commonwealth and 45 percent to the Montgomery County Institution District.